1   CAROLYN HOECKER LUEDTKE (State Bar No. 207976)
    Carolyn.Luedtke@mto.com
2   TERRA CASTILLO LAUGHTON (State Bar No. 321683)
    Terra.Laughton@mto.com
3   MUNGER, TOLLES & OLSON LLP
    560 Mission Street, Twenty-Seventh Floor
4   San Francisco, California 94105-3089
    Telephone:    (415) 512-4000
5   Facsimile:    (415) 512-4077

6   GLENN D. POMERANTZ (State Bar No. 112503)
    Glenn.Pomerantz@mto.com
7   HAILYN J. CHEN (State Bar No. 237436)
    Hailyn.Chen@mto.com
8   LAUREN M. HARDING (State Bar No. 308029)
    Lauren.Harding@mto.com
9   MUNGER, TOLLES & OLSON LLP
    350 South Grand Avenue, Fiftieth Floor
10  Los Angeles, California 90071-3426
    Telephone:    (213) 683-9100
11  Facsimile:    (213) 687-3702

12  *Attorneys for Defendants The National Collegiate*
    *Athletic Association and The Board of Governors*
13  *of the National Collegiate Athletic Association*

14              UNITED STATES DISTRICT COURT

15             NORTHERN DISTRICT OF CALIFORNIA

16                    SAN JOSE DIVISION

17

| | |
|---|---|
| 18  ERIN ALDRICH, LONDA BEVINS, JESSICA JOHNSON, AND BEATA | Case No. 5:20-cv-01733-EJD |
| 19  CORCORAN, individually and on behalf of all others similarly situated, | **DEFENDANTS THE NATIONAL COLLEGIATE ATHLETIC** |
| 20 | **ASSOCIATION AND THE BOARD OF GOVERNORS OF THE NATIONAL** |
| 21              Plaintiffs, | **COLLEGIATE ATHLETIC ASSOCIATION'S REPLY IN SUPPORT** |
| 22              vs. | **OF MOTION TO DISMISS AND/OR TO STRIKE THE FIRST AMENDED** |
| 23  NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, THE BOARD OF | **COMPLAINT** |
| 24  GOVERNORS OF THE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, | *[Filed Concurrently with Reply in Support of Request for Judicial Notice and Declaration of* |
| 25  and JOHN REMBAO, | *Lauren M. Harding in Support of Reply to Motion to Dismiss]* |
| 26              Defendants. | |
| 27 | Judge:   Hon. Edward J. Davila |
|  | Date:    September 3, 2020 |
|  | Time:    9:00 a.m. |
| 28 | Crtrm.:   4 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION...............................................................................................................1

ARGUMENT .....................................................................................................................2

I.  THE MEMBER INSTITUTIONS ARE NOT AGENTS OF THE NCAA ..........................2

II. THE COURT SHOULD DISMISS FOR LACK OF PERSONAL JURISDICTION ..........2

    A.  This Court Lacks General Jurisdiction over the NCAA and Its Board......................2

    B.  Plaintiffs Fail to Show Specific Jurisdiction .................................................6

III. VENUE IS IMPROPER........................................................................................8

IV. THE NCAA BOARD LACKS THE CAPACITY TO BE SUED UNDER RULE 17(B)........................................................................................................................8

V.  PLAINTIFFS DO NOT HAVE STANDING TO SEEK AN INJUNCTION ......................9

VI. PLAINTIFFS' CLAIMS ARE TIME-BARRED ........................................................11

    A.  Plaintiffs' Choice-of-Law Analysis Is Incorrect ..........................................11

    B.  Even Under Plaintiffs' Preferred Choice of Law, Their Claims Are Untimely .........................................................................................................11

VII. THE NCAA AND ITS BOARD DO NOT OWE A LEGALLY ACTIONABLE DUTY TO SUPPORT PLAINTIFFS' NEGLIGENCE-BASED CLAIMS ........................14

    A.  California Law Does Not Apply ...................................................................14

    B.  Plaintiffs Fail to Allege the Required Duty of Care Under Indiana Law................15

VIII. THERE IS NO CONTRACT BETWEEN THE NCAA AND STUDENT-ATHLETES..............................................................................................................17

IX. THE NCAA IS NOT VICARIOUSLY LIABLE FOR REMBAO'S ACTIONS ...............19

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

Adams v. BRG Sports, Inc.,
   No. 17-cv-00457, 2017 WL 5598647 (N.D. Cal. Nov. 21, 2017) ..............................................8

Ashcroft v. Iqbal,
   556 U.S. 662 (2009) ............................................................................................................12

Beliveau v. Caras,
   873 F. Supp. 1393 (C.D. Cal. 1995).....................................................................................20

Big Sky Conference v. Weston,
   No. 17-cv-04975 (N.D. Ill. June 8, 2017) ............................................................................18

Bledsoe v. Webb,
   839 F.2d 1357 (9th Cir. 1988)........................................................................................9, 16

BNSF Railway Co. v. Tyrrell,
   137 S. Ct. 1549 (2017) .........................................................................................................6

Bristol-Myers Squibb Co. v. Superior Court,
   137 S. Ct. 1773 (2017) .........................................................................................................6

Cent. Delta Water Agency v. United States,
   306 F.3d 938 (9th Cir. 2002)..............................................................................................10

Clapper v. Amnesty International USA,
   568 U.S. 398 (2013) .......................................................................................................9, 10

Corcoran v. CVS Health Corp.,
   169 F. Supp. 3d 970 (N.D. Cal. 2016) ..................................................................................3

Coremetrics v. Atomic Park.com,
   370 F. Supp. 2d 1013 (N.D. Cal. 2005) ................................................................................5

Cox v. Government Employees Insurance Co.,
   126 F.2d 254 (6th Cir. 1942)................................................................................................2

Daimler AG v. Bauman,
   571 U.S. 117 (2014) ...............................................................................................2, 3, 4, 5

Dallas Texans Soccer Club v. Major League Soccer Players Union,
   247 F. Supp. 3d 784 (E.D. Tex. 2017) ..................................................................................5

Doe v. Uber Technologies, Inc.,
   184 F. Supp. 3d 774 (N.D. Cal. 2016) ................................................................................20

NCAA & BOARD'S REPLY IN SUPPORT OF MOTION TO DISMISS AND/OR TO STRIKE THE FAC

1

### **TABLE OF AUTHORITIES**
### (Continued)

2

**Page(s)**

3

Doe v. Uber Technologies, Inc.,
  No. 19-cv-03310, 2019 WL 6251189 (N.D. Cal. Nov. 22, 2019) .......................................19, 20

4

Doe v. University of Tennessee,
  186 F. Supp. 3d 788 (M.D. Tenn. 2016) ...........................................................................10, 12

5

6

Donatelli v. National Hockey League,
  893 F.2d 459 (1st Cir. 1990) ..............................................................................................5

7

8

Flood v. National Collegiate Athletic Ass'n,
  No. 15-CV-00890, 2015 WL 5785801 (M.D. Pa. Aug. 26, 2015)............................................17

9

G&G Productions LLC v. Rusic,
  902 F.3d 940 (9th Cir. 2018)..............................................................................................11

10

11

George v. National Collegiate Athletic Ass'n,
  No. CV 08–03401, 2008 WL 5422882 (C.D. Cal. Dec. 17, 2008) ...........................................3

12

13

Guaranty Trust Co. of New York v. York,
  326 U.S. 99 (1945) ............................................................................................................14

14

Hairston v. Pacific 10 Conference,
  101 F.3d 1315 (9th Cir. 1996).............................................................................................18

15

16

Hatfield v. Halifax PLC,
  564 F.3d 1177 (9th Cir. 2009).............................................................................................11

17

18

Knelman v. Middlebury College,
  898 F. Supp. 2d 697 (D. Vt. 2012).......................................................................................18

19

Krottner v. Starbucks Corp.,
  628 F.3d 1139 (9th Cir. 2010).............................................................................................10

20

21

Langston v. Mid-America Intercollegiate Athletics Ass'n,
  No. 16 C 8727, 2020 WL 1445631 (N.D. Ill. Mar. 25, 2020) .................................................13

22

23

Lu v. Powell,
  621 F.3d 944 (9th Cir. 2010)...............................................................................................19

24

Lujan v. Defenders of Wildlife,
  504 U.S. 555 (1992) .......................................................................................................9, 10

25

26

Mayall v. USA Water Polo, Inc.,
  174 F. Supp. 3d 1220 (C.D. Cal. 2016)................................................................................9

27

Mazza v. American Honda Motor Co.,
  666 F.3d 581 (9th Cir. 2012)...............................................................................................15

28

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

Mehr v. Féderation Internationale de Football Ass'n,
    115 F. Supp. 3d 1035 (N.D. Cal. 2015) ...................................................................5, 9

In re National Hockey League Players' Concussion Injury Litigation,
    No. 15-cv-00472, 2019 WL 5079980 (D. Minn. Oct. 10, 2019) ...............................5

NCAA v. Ken Grody Management,
    No. 8:18-cv-00153 (C.D. Cal.).................................................................................3

Ocean Advocates v. U.S. Army Corps of Engineers
    402 F.3d 846 (9th Cir. 2005).................................................................................10

Omeluk v. Langsten Slip & Batbyggeri A/S,
    52 F.3d 267 (9th Cir. 1995).....................................................................................7

Pro Sports v. West,
    639 F. Supp. 2d 475 (D.N.J. 2009) .........................................................................3

Ranza v. Nike, Inc.,
    793 F.3d 1059 (9th Cir. 2015).................................................................................4

Remijas v. Neiman Marcus Group, LLC,
    794 F.3d 688 (7th Cir. 2015).................................................................................10

Richardson v. Southeastern Conference,
    No. 16-cv-09980 (N.D. Ill. Aug. 8, 2016)...............................................................18

Rose v. Giamatti,
    721 F. Supp. 906 (S.D. Ohio 1989)...................................................................13, 18

Rose v. National Collegiate Athletic Ass'n,
    346 F. Supp. 3d 1212 (N.D. Ill. 2018) ...................................................................18

San Diego County Gun Rights Committee v. Reno,
    98 F.3d 1121 (9th Cir. 1996).................................................................................9

Satmarean v. Philips Consumer Luminaries, NA,
    No. 13-CV-02778, 2013 WL 5425339 (N.D. Cal. Sept. 27, 2013) ...........................4

Spierer v. Rossman,
    798 F.3d 502 (7th Cir. 2015).................................................................................14

Theta Chi Fraternity, Inc. v. Leland Stanford Junior University,
    212 F. Supp. 3d 816 (N.D. Cal. 2016) .................................................................8, 9

Threlkeld v. Tucker,
    496 F.2d 1101 (9th Cir. 1974)................................................................................3

1

2

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

3

*Tradin Organics USA, LLC v. Advantage Health Matters, Inc.*,
   No. 14-cv-02041, 2015 WL 1306929 (N.D. Cal. Mar. 23, 2015)...........................................7, 8

4

*Tuazon v. R.J. Reynolds Tobacco Co.*,
   433 F.3d 1163 (9th Cir. 2006) ................................................................................................5

5

6

*Wagner v. Texas A & M University*,
   939 F. Supp. 1297 (S.D. Tex. 1996) ....................................................................................18

7

8

*Walden v. Fiore*,
   571 U.S. 277 (2014) ...............................................................................................................6

9

*Waldman v. Palestine Liberation Org.*,
   835 F.3d 317 (2d Cir. 2016) ..................................................................................................4

10

*Williams v. Yamaha Motor Co.*,
   851 F.3d 1015 (9th Cir. 2017) ...............................................................................................6

11

12

*In re Zappos.com, Inc.*,
   888 F.3d 1020 (9th Cir. 2018) ...............................................................................................9

13

14

**STATE CASES**

15

*Barenborg v. Sigma Alpha Epsilon Fraternity*,
   33 Cal. App. 5th 70 (2019)......................................................................................2, 4, 16, 19

16

17

*Broadway Maintenance Corp. v. Rutgers, State University*,
   90 N.J. 253 (1982) ...............................................................................................................18

18

19

*Cossman v. DaimlerChrysler Corp.*,
   108 Cal. App. 4th 370 (2003)...............................................................................................11

20

*Daza v. Los Angeles Community College District*,
   247 Cal. App. 4th 260 (2016)...............................................................................................19

21

22

*Doe 1 v. City of Murrieta*,
   102 Cal. App. 4th 899 (2002)...............................................................................................19

23

24

*Doe v. Roe*,
   191 Ariz. 313 (1998) ......................................................................................................12, 13

25

*Edmunds v. Atchison, T. & S.F. Ry. Co.*,
   174 Cal. 246 (1917).............................................................................................................20

26

27

*Goodwin v. Yeakle's Sports Bar & Grill, Inc.*,
   62 N.E.3d 384 (Ind. 2016)...................................................................................................16

28

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

Javor v. Taggart,
   98 Cal. App. 4th 795 (2002)..................................................................................14

John R. v. Oakland Unified School District,
   48 Cal. 3d 438 (1989)..................................................................................13, 20

Lanni v. National Collegiate Athletic Ass'n,
   42 N.E. 542 (Ind. App. 2015)........................................................................15, 16

Lisa M. v. Henry Mayo Newhall Memorial Hospital,
   12 Cal. 4th 291 (1995)..................................................................................20

Mary M. v. City of Los Angeles,
   54 Cal. 3d 202 (1991)..................................................................................19

McCann v. Foster Wheeler,
   48 Cal. 4th 68 (2010)..................................................................................11

Morin v. Henry Mayo Newhall Memorial Hospital,
   29 Cal. App. 4th 473 (1994)..................................................................................20

Nolde v. Frankie,
   192 Ariz. 276 (1998)..................................................................................12

Passmore v. Multi-Management Services, Inc.,
   810 N.E.2d 1022 (Ind. 2004)..................................................................................17

Patterson v. Domino's Pizza, LLC,
   60 Cal. 4th 474 (2014)..................................................................................2, 19

Regents of University of California v. Superior Court,
   4 Cal. 5th 607 (2018)..................................................................................16

Rita M. v. Roman Catholic Archbishop,
   187 Cal. App. 3d 1453 (1986)..................................................................................14

Rowland v. Christian,
   69 Cal. 2d 108 (1968)..................................................................................15

S. G. Borello & Sons, Inc. v. Department of Industrial Relations,
   48 Cal. 3d 341 (1989)..................................................................................19

Schmitz v. National Collegiate Athletic Ass'n,
   67 N.E.3d 852 (Ohio Ct. App. 2016) ..................................................................................17

Smith v. Delta Tau Delta, Inc.,
   9 N.E.3d 154 (Ind. 2014)..................................................................................2, 15, 16

1
2

**<u>TABLE OF AUTHORITIES</u>**
(Continued)

**Page(s)**

3

<u>Tibbs v. Huber, Hunt & Nichols, Inc.</u>,
    668 N.E.2d 248 (Ind. 1996) ...................................................................................14

4

<u>Webb v. Jarvis</u>,
    575 N.E.2d 992 (Ind. 1991) ...................................................................................15

5
6

<u>Yost v. Wabash College</u>,
    3 N.E.3d 509 (Ind. 2014) ..................................................................................15, 16

7

**FEDERAL STATUTES**

8
9

28 U.S.C. § 1406(a) .........................................................................................................8

10

Federal Rule of Civil Procedure 17(b) ...........................................................................9

11

**STATE STATUTES**

12

Arizona Revised Statutes § 12-502 ...............................................................................11

13

California Code of Civil Procedure § 361 .....................................................................11

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

Plaintiffs' opposition ("Opp.") to the NCAA's motion to dismiss and/or strike ("MTD") is long on rhetoric but glosses over and cannot defend the procedural flaws in their First Amended Complaint ("FAC") that require dismissal of all claims against the NCAA and its Board.

*First*, relying on outdated case law, Plaintiffs try unsuccessfully to invoke general jurisdiction under a theory that is not sufficient to meet the extraordinarily high bar set by the Supreme Court for general jurisdiction and that would impermissibly confer jurisdiction over the NCAA in all 50 states. Nor are Plaintiffs able to show specific jurisdiction because the claims do not arise out of actions in California. Because there is no jurisdiction, venue is also improper.

*Second*, Plaintiffs do not seriously dispute that the Board lacks capacity to be sued.

*Third*, Plaintiffs cannot explain how new Plaintiff Corcoran has standing when she has not alleged any harm or any threat of harm to her from her coaches. Plaintiffs concede that Aldrich, Bevins, and Johnson have no standing to pursue injunctive relief as *former* student-athletes.

*Fourth*, the former student-athletes' decades-old claims are untimely. Aldrich relies on an Arizona statute to try to toll her limitations period, but fails to allege she was of "unsound mind" from 1996 to 2019. Nor can she benefit from the discovery rule. Plaintiffs' opposition fails to contend with the fact that Bevins and Johnson knew they had suffered sexual abuse in 2000 when Johnson filed a complaint with the University of Texas-Austin ("UT"), yet waited 20 years to sue.

If the Court gets past these procedural flaws (it should not), Plaintiffs' claims fail on the substance. Plaintiffs strive to paint the NCAA as not caring about student-athlete safety and well-being. That is not true. The NCAA's mission includes providing support for its nearly 1,100 member institutions across the country so that over 400,000 student-athletes can compete fairly and safely. The NCAA abhors sexual abuse and provides resources for its members to fight against it. But the NCAA's efforts to promote fairness and safety in college athletics do not mean it has assumed a legal duty to protect from third-party harm or every aspect of athletic life. Nor does it mean the NCAA has a contract with each of those more than 400,000 student-athletes. The NCAA also is not responsible for the torts of coaches like John Rembao under agency principles. The NCAA and its Board respectfully request this case be dismissed against them in its entirety.

1

**ARGUMENT**

2

**I.      THE MEMBER INSTITUTIONS ARE NOT AGENTS OF THE NCAA**

3

Plaintiffs' opposition relies throughout on the incorrect premise that the NCAA is

4 responsible for all actions taken by member institutions.  Not so.  The NCAA, which Plaintiffs do

5 not dispute is a voluntary membership association, would only be liable for the acts of its members

6 if they act as agents; this requires a showing that the NCAA "retained or assumed a general right

7 of control over factors such as hiring, direction, supervision, discipline, discharge, and relevant

8 day-to-day aspects of the workplace behavior of" a member institution's employees.  See

9 Patterson v. Domino's Pizza, LLC, 60 Cal. 4th 474, 478 (2014); Cox v. Gov't Emps. Ins. Co., 126

10 F.2d 254, 257 (6th Cir. 1942) ("A voluntary association is not liable for the tort of a member when

11 perpetrated beyond the scope of its control over his acts.").

12

Plaintiffs try to point to the NCAA's rules and regulations regulating certain conduct of

13 member institutions, and ability to impose certain discipline for rule violations, to suggest the

14 NCAA's members are its agents.  But this is not the type of day-to-day control necessary to create

15 an agency relationship.  Plaintiffs fail to respond to binding case law establishing this standard.

16 See MTD at 15, 27-30 (citing, e.g., Patterson, 60 Cal. 4th at 499; Barenborg v. Sigma Alpha

17 Epsilon Fraternity, 33 Cal. App. 5th 70, 85 (2019); Smith v. Delta Tau Delta, Inc., 9 N.E.3d 154,

18 164 (Ind. 2014)).  Plaintiffs have not pled facts sufficient to show that an agency relationship

19 existed, and this Court should focus on alleged actions by *the NCAA*—rather than by its members.

20

**II.     THE COURT SHOULD DISMISS FOR LACK OF PERSONAL JURISDICTION**

21

Plaintiffs failed to meet their burden to show a prima facie case of either general or specific

22 jurisdiction, and the Court should dismiss the case for lack of personal jurisdiction.

23

**A.      This Court Lacks General Jurisdiction over the NCAA and Its Board**

24

Plaintiffs' opposition ignores the extraordinarily high burden a plaintiff must meet after the

25 Supreme Court's decision in Daimler AG v. Bauman to establish general jurisdiction outside of a

26 defendant's place of incorporation or principal place of business, which here is in Indiana.  Such a

27 finding is reserved for an "exceptional case."  See Daimler, 571 U.S. 117, 139 n.19 (2014).

28 Indeed, the NCAA is not aware of any published Ninth Circuit case following Daimler conferring

general jurisdiction over an out-of-state corporation, and Plaintiffs' opposition cites to no such post-Daimler decision.  Instead, Plaintiffs repeatedly cite pre-Daimler cases, which is inappropriate.  See Corcoran v. CVS Health Corp., 169 F. Supp. 3d 970, 981 (N.D. Cal. 2016) (criticizing use of pre-Daimler cases and stating "[o]ther post-Daimler plaintiffs have attempted similarly ill-fated arguments for general jurisdiction based on the old standard").

Instead of making the requisite showing of contacts with California "so 'continuous and systematic' as to render [the NCAA] essentially at home in the forum State," Daimler, 571 U.S. at 139, Plaintiffs advance three arguments they contend "[t]aken together" show jurisdiction.  See Opp. at 4.  None of these arguments, separately or together, support jurisdiction.

*First*, Plaintiffs argue the NCAA "avails itself of this jurisdiction when it suits," citing two California cases—one where the NCAA sued to defend its trademark and one where it was sued in California.  See id. (citing NCAA v. Ken Grody Mgmt., No. 8:18-cv-00153 (C.D. Cal.) and George v. NCAA, No. CV 08–03401, 2008 WL 5422882 (C.D. Cal. Dec. 17, 2008)).  But Plaintiffs provide no authority for their novel theory that litigating two cases in a state is sufficient to confer general jurisdiction in that state for all purposes thereafter.  Moreover, while the George opinion notes that the NCAA agreed "venue" was proper in that case, it nowhere says the NCAA conceded general jurisdiction was proper, as Plaintiffs incorrectly suggest, Opp. at 4.

To support their novel general jurisdiction theory about prior in-state litigation, Plaintiffs cite two *specific* jurisdiction cases.  Opp. at 4 (citing Threlkeld v. Tucker, 496 F.2d 1101 (9th Cir. 1974) and Pro Sports v. West, 639 F. Supp. 2d 475 (D.N.J. 2009)).  Those cases are inapposite.  In both, the defendants were subject to *specific* jurisdiction because they previously commenced the very actions upon which they were later sued in the same forum.  See Threlkeld, 496 F.2d at 1103; Pro Sports, 639 F. Supp. 2d at 482.  Here, the NCAA and its Board never commenced an action against Plaintiffs in California to justify specific—much less *general*—jurisdiction.

*Second*, the fact that 58 of the nearly 1,100 NCAA members (approximately 5%) are in California is irrelevant to general jurisdiction.  See Opp. at 5 (incorrectly describing the NCAA's membership as being "heavily concentrated" in California).  The NCAA's nearly 1,100 members are in all 50 states.  See MTD at 6; Campbell Aff. ¶ 5.  And Daimler is clear that any theory that

1   would apply general jurisdiction in "every State" is "unacceptably grasping." See 571 U.S. at 138.

2   Plaintiffs have no answer to this fatal problem with their general jurisdiction theory.

3       Plaintiffs' citation to the rules governing an entity's citizenship for purposes of diversity

4   jurisdiction (which, for an unincorporated association like the NCAA, turns on where its members

5   reside), see Opp. at 5, fails for the same reason.  Moreover, citizenship, relevant for subject matter

6   jurisdiction, is a distinct legal concept from personal jurisdiction.  See Satmarean v. Philips

7   Consumer Luminaries, NA, No. 13-CV-02778, 2013 WL 5425339, at *2 (N.D. Cal. Sept. 27,

8   2013) (subject matter and personal jurisdiction serve "different purposes, and these purposes affect

9   the legal character of the two requirements") (citation omitted).

10      Plaintiffs also suggest that the actions of the NCAA's member institutions, who are alleged

11  "mutual agen[ts]" of the NCAA, should be "imputed" to the NCAA for jurisdiction.  Opp. at 5.

12  *First*, this argument fails because member institutions are not agents of the NCAA.  See Part I,

13  supra.  *Second*, even if they were, post-Daimler, the relevant contacts are *an entity's* contacts with

14  the forum, rather than its *agent's* contacts.  See Ranza v. Nike, Inc., 793 F.3d 1059, 1071 (9th Cir.

15  2015) (after Daimler, courts cannot "attribute a local entity's contacts to its out-of-state affiliate"

16  under agency test to establish jurisdiction).  Plaintiffs try to distinguish Daimler because of the

17  "strong presumption" of legal separateness between corporations and their subsidiaries.  Opp. at 5

18  n.2.  But unincorporated associations and their members also enjoy legal separateness.  See

19  Barenborg, 33 Cal. App. 5th at 77.  The Second Circuit, in finding no general jurisdiction over

20  unincorporated associations, confirmed that Daimler's principles apply to unincorporated

21  associations.  See Waldman v. Palestine Liberation Org., 835 F.3d 317, 332 (2d Cir. 2016)

22  ("[T]here is no reason to invent a different test for general personal jurisdiction depending on

23  whether the defendant is an individual, a corporation, or another entity[.]").

24      Plaintiffs' additional argument that the NCAA's alleged exercise of "significant control"

25  over its California members is "independently sufficient" to confer jurisdiction, Opp. at 6,

26  misunderstands the law after Daimler.  The Court in Daimler explained that a corporation's

27  "substantial[] control" over a subsidiary did not provide reasonable limits to an otherwise

28  overbroad general jurisdiction theory that—as Plaintiffs' theory does here—would subject an out-

1  of-state entity to jurisdiction "whenever they have an in-state subsidiary or affiliate." See

2  Daimler, 571 U.S. at 136 & n.15.  Plaintiffs' reliance on the First Circuit's pre-Daimler "control"

3  test for personal jurisdiction is thus misplaced.  Opp. at 6 (citing Donatelli v. Nat'l Hockey

4  League, 893 F.2d 459 (1st Cir. 1990)).  Furthermore, the allegedly controlling actions of the

5  NCAA, such as disciplining members for rule violations, are centered at the NCAA's headquarters

6  in Indiana.  Campbell Aff. ¶¶ 7-9.  And, if the Court accepted the (incorrect) argument that the

7  NCAA is subject to general jurisdiction everywhere the NCAA's rules *apply*, then the NCAA

8  would be subject to general jurisdiction in all 50 states, which is impermissible under Daimler.

9      More generally, Plaintiffs' "control" theory impermissibly looks at the contacts of the

10  NCAA's members, rather than the NCAA itself.  Plaintiffs attempt to distinguish Mehr v. Féd'n

11  Internationale de Football Ass'n, 115 F. Supp. 3d 1035, 1048 (N.D. Cal. 2015), which assessed

12  contacts of FIFA—not of its member U.S. Soccer—by asserting it would have ruled differently

13  had its members been in California.  Opp. at 6-7.  That is speculative and contrary to other post-

14  Daimler decisions declining to exercise jurisdiction where, as here, the associations have members

15  both in-state and nationwide.  See, e.g., Dallas Texans Soccer Club v. Major League Soccer

16  Players Union, 247 F. Supp. 3d 784, 789 (E.D. Tex. 2017); In re Nat'l Hockey League Players'

17  Concussion Injury Litig., No. 15-cv-00472, 2019 WL 5079980, at *4 (D. Minn. Oct. 10, 2019).

18      *Third*, Plaintiffs rely on pre-Daimler cases applying outdated standards to claim its

19  activities in California "establish physical and economic presence" sufficient for general

20  jurisdiction.  See Opp. at 7-8 (relying on Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163

21  (9th Cir. 2006) and Coremetrics v. Atomic Park.com, 370 F. Supp. 2d 1013 (N.D. Cal. 2005)).

22  Indeed, the Tuazon court made clear the defendant's contacts would not meet a "home away from

23  home" standard, now required by Daimler.  See Tuazon, 433 F.3d at 1173.  Plaintiffs do not allege

24  facts about the NCAA's activities in California to meet Daimler's extraordinarily high standard.

25      To begin, some of the facts alleged in the opposition about the NCAA's contacts with

26  California are simply wrong or fail to prove their point.  For instance, the NCAA does not "elect[]

27  to host" the Rose Bowl, see Opp. at 7; the Pasadena Tournament of Roses Association does.  See

28  Harding Decl. ¶ 2.  Further, Plaintiffs make the bald assertion that California members are

1    responsible for an "outsized portion" of the NCAA's revenue, but they fail to support this claim.

2    Opp. at 7.  They instead cite NCAA financials in Exhibit C of their Selbin Declaration, but

3    *nothing* in those financials says anything about what, if any, revenue comes from California

4    members.  See id. & Selbin Decl. Ex. C.  And even if California played an "outsized" role in

5    NCAA's revenue, the law is clear that it is not enough to look solely at the contacts of the NCAA

6    in California, and instead a court must look at the magnitude of the NCAA's contacts "in their

7    entirety" across the nation.  See BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549, 1559 (2017).

8         Of course, the NCAA acknowledges that it conducts activity in California, as it does in all

9    50 states.  The NCAA hosts championships in California (as it does across the country), it

10   monitors laws in California that impact college athletics (as it does everywhere), and its

11   championships attract fans from across the country, including California.  See, e.g., Selbin Decl.

12   Ex. G, at 3 (noting championships "will be held in locations all across the United States"); see also

13   Harding Decl. ¶ 3 (schedule of Women's Division I basketball tournament in 2019 includes cities

14   across the country).  Because the NCAA operates in all 50 states, it "can scarcely be deemed at

15   home in all of them."  Tyrrell, 137 S. Ct. at 1559.

16        **B.     Plaintiffs Fail to Show Specific Jurisdiction**

17        Plaintiffs have also failed to meet their burden to show their claims "arise out of or relate

18   to" any of the NCAA or its Board's contacts with California for specific jurisdiction.  Bristol-

19   Myers Squibb Co. v. Superior Ct., 137 S. Ct. 1773, 1786 (2017).  Plaintiffs posit that the NCAA's

20   California members "contributed to development (or lack) of appropriate policies to address

21   sexual abuse and were (or would have been) governed by those policies . . . ."  Opp. at 9.  Even if

22   California member institutions were NCAA agents whose actions were attributable to the NCAA

23   (which they are not), an agent's contacts with a forum cannot confer specific jurisdiction over

24   entities like the NCAA.  See Williams v. Yamaha Motor Co., 851 F.3d 1015, 1024 (9th Cir. 2017)

25   (Daimler's criticism of the agency test applies "with equal force" to specific jurisdiction).

26   Plaintiffs must instead show that the contacts of *the NCAA itself*—not its members—gave rise to

27   the claims.  See Walden v. Fiore, 571 U.S. 277, 284 (2014) ("aris[ing] out of" requires contacts

28   that "the defendant *himself*" creates with the forum).

1    Plaintiffs fail to identify any contacts by the NCAA itself in California that were the "but

2  for" cause of Plaintiffs' claims, as required for the "arising under" prong.  See Tradin Organics

3  USA, LLC v. Advantage Health Matters, Inc., No. 14-cv-02041, 2015 WL 1306929, at *5 (N.D.

4  Cal. Mar. 23, 2015) (Davila, J.) (citation omitted).  For instance, Plaintiffs argue that the NCAA

5  "adopted and implemented" its allegedly inadequate policies in California.  See Opp. at 10 (citing

6  FAC ¶ 31).  But Paragraph 31 of the FAC says nothing about NCAA policies being *adopted in*

7  California.  Indeed, as set forth in the opening motion, the NCAA facilitated its members'

8  adoption of those policies from Indiana—not California.  See MTD at 7; Campbell Aff. ¶¶ 7-9.

9  And any "implementation" was national—not just in California.  Plaintiffs have also not alleged

10 that the NCAA's California-based contacts contributed to the NCAA's alleged failure to

11 implement sexual abuse policies.  See Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267,

12 272 (9th Cir. 1995) (claim was "not one which arose out of or resulted from [the defendant's]

13 forum-related activities" when plaintiff "would have suffered same injury even if none of the

14 [forum-related] contacts had taken place").

15   Plaintiffs appear to concede that nothing related to their own claims—i.e., the claims of

16 Aldrich, Bevins, Johnson, and Corcoran—arise out of actions in California.  For instance, they

17 appear to agree that they were never abused in California.  Opp. at 11.  Instead, Plaintiffs try to pin

18 their specific jurisdiction argument on bare bones allegations about Rembao having an alleged

19 relationship with Sue McNeal, presumably in the 1980s, at Cal Poly.  Id. at 10.  These allegations

20 do not create specific jurisdiction.  Even assuming their allegations show Rembao and McNeal

21 started dating when they were a coach/student-athlete at Cal Poly (which they do not, see FAC

22 ¶¶ 30-31), Plaintiffs do not provide prima facie evidence to support (or even allege) that the

23 NCAA or even Cal Poly knew about Rembao's alleged relationship with McNeal.  Any "failure to

24 prevent coaches involved in inappropriate student relationships from transferring schools," see

25 Opp. at 11, would require the school and the NCAA to *know* about the alleged relationship and to

26 then fail to act, which is not alleged here.  It is simply too attenuated to infer from facts not alleged

27 that the purported relationship between McNeal and Rembao in California in the 1980s was the

28 *but for* cause of Plaintiffs' claims of abuse outside California.

1    Even if Plaintiffs could meet their burden to show their claims "arise from" the NCAA's

2  contacts with California (which they cannot), exercising jurisdiction here would be unreasonable.

3  <u>See</u> <u>Tradin Organics</u>, 2015 WL 1306929, at *5-6.  The relevant factors weigh strongly against

4  finding jurisdiction, including the "extent of the [NCAA or Board's] purposeful interjection into

5  the forum," which has been extremely limited given Plaintiffs' reliance on members' actions to

6  show jurisdiction.  California, too, has no apparent connection to Plaintiffs' claims—they do not

7  allege abuse in California, the NCAA is headquartered in Indiana, and the alleged failures in

8  policymaking centered in Indiana.  California thus has an inferior interest in adjudicating the

9  dispute than Indiana, and also is of less importance to the Plaintiffs' "interest in convenient and

10  effective relief."  As explained next, Indiana would be an alternative forum as to the NCAA, with

11  a greater interest in resolving the dispute.

12  **III.    VENUE IS IMPROPER**

13    Plaintiffs agree that venue here turns on whether this Court has personal jurisdiction.  Opp.

14  at 11.  If this Court finds no personal jurisdiction, then Plaintiffs advance no argument to support

15  venue, and this case should be dismissed for improper venue under 28 U.S.C. § 1406(a).

16  Alternatively, and only if the Court determines the "interest of justice" so requires, <u>see</u> <u>id.</u>

17  § 1406(a), the NCAA requests transfer to the Southern District of Indiana, where the NCAA is

18  headquartered and where the NCAA facilitated the promulgations of the rules at issue in this case.

19  Contrary to Plaintiffs' assertion, the NCAA explained in its opening brief why Indiana would have

20  a greater interest than California in this action.  MTD at 7, 11, 16-18; <u>see also</u> <u>Adams v. BRG</u>

21  <u>Sports, Inc.</u>, No. 17-cv-00457, 2017 WL 5598647, at *5 (N.D. Cal. Nov. 21, 2017) (transfer under

22  § 1406 justified to state where company headquartered and which had "much stronger interest").

23  **IV.    THE NCAA BOARD LACKS THE CAPACITY TO BE SUED UNDER RULE 17(B)**

24    Plaintiffs have not identified any authority allowing for suit against a Board of Directors of

25  an unincorporated association like the NCAA.  <u>See</u> Opp. at 13.  Nor could they.  Several courts—

26  including one in this District applying California law—have held that boards do not exist

27  separately from their corporate counterparts and thus are not separate entities with capacities to be

28  sued.  <u>See, e.g.</u>, <u>Theta Chi Fraternity, Inc. v. Leland Stanford Junior Univ.</u>, 212 F. Supp. 3d 816,

1    821 (N.D. Cal. 2016) (citing cases).  Plaintiffs fail to address why the Court should not follow

2    Judge Whyte's reasoning in Theta Chi, and instead incorrectly assert that Theta Chi reached a non-

3    binding "tentative conclusion."  See Opp. at 12.  The well-reasoned decision by Judge Whyte was

4    not tentative and is directly on-point, it articulates the basis for dismissal, and Plaintiffs have no

5    response.  The claims against the Board should be dismissed or stricken under Rule 17(b).

6    **V.      PLAINTIFFS DO NOT HAVE STANDING TO SEEK AN INJUNCTION**

7         Corcoran does not dispute that she lacks standing to seek damages, Opp. at 12, so the only

8    question is whether she has standing to salvage Plaintiffs' request for an injunction.  She does not.

9         Corcoran must show (1) an injury in fact, (2) arising out of the defendant's conduct,

10   (3) that is likely to be redressed by a favorable decision.  Lujan v. Defs. of Wildlife, 504 U.S. 555,

11   560 (1992).  While Corcoran suggests a "credible threat" of sexual abuse is sufficient to show

12   injury, Opp. at 13, she must show a "substantial risk of harm" that is "concrete, particularized and

13   actual or imminent," not "hypothetical."  See Clapper v. Amnesty Int'l USA, 568 U.S. 398, 402,

14   409, 414 n.5 (2013); In re Zappos.com, Inc., 888 F.3d 1020, 1029 (9th Cir. 2018).  She does not.

15        Corcoran asserts that sexual abuse is an "imminent concern for *all* student athletes" given

16   the "pervasive problem" of sexual abuse by coaches.  Opp. at 13.  Such a broad theory of standing

17   ignores the requirement that injury in fact be "concrete" and "particularized," see Lujan, 504 U.S.

18   at 560 n.1, as it would allow any student-athlete, on any team, anywhere in the country—no matter

19   how far removed from an incident of sexual abuse or an abuser—to claim an injury.  See San

20   Diego Cty. Gun Rights Comm. v. Reno, 98 F.3d 1121, 1127 (9th Cir. 1996) ("a general threat of

21   prosecution is not enough"); Mayall v. USA Water Polo, Inc., 174 F. Supp. 3d 1220, 1225 (C.D.

22   Cal. 2016) (athlete lacked standing in part because injury required "an individualized inquiry").

23        The single allegation specific to Corcoran in the FAC states only that she is a rower at

24   Princeton.  FAC ¶ 25.  Corcoran does not allege any other facts showing that *she* faces a concrete,

25   particularized, substantial risk of abuse, either because she has previously experienced the harm

26   for which she claims to be at risk, or for any other reason.  Courts in this Circuit have dismissed

27   similar complaints.  See Mehr, 115 F. Supp. 3d at 1057-58 (soccer players' speculative allegation

28   of "increased risk" of brain injuries insufficient).  Compare Bledsoe v. Webb, 839 F.2d 1357,

1   1361 (9th Cir. 1988) (cited in Opp. at 14; claim not moot where plaintiff suffered discrimination

2   twice); Cent. Delta Water Agency v. U.S., 306 F.3d 938, 949 (9th Cir. 2002) (cited in Opp. at 13;

3   standing met where plaintiffs previously suffered similar crop damage).  Unlike in Doe v. Univ. of

4   Tenn., 186 F. Supp. 3d 788 (M.D. Tenn. 2016), there are no allegations that Princeton (or, one

5   step removed, the NCAA) has actively fostered a sexually hostile environment or protected known

6   abusers at Princeton such that Corcoran is subject to imminent future harm. Id. at 812.

7        Corcoran's other cases are inapposite.  Ocean Advocates v. U.S. Army Corps involved a

8   claim of environmental harm, which implicated a modified standing analysis inapplicable here.

9   402 F.3d 846, 860 (9th Cir. 2005) (injury in fact met with showing of "aesthetic or recreational

10  interest in a particular place, or animal, or plant species").  In Krottner v. Starbucks Corp., 628

11  F.3d 1139 (9th Cir. 2010), the court found that Starbucks employees had standing based on an

12  "increased risk of future identity theft" after a laptop was stolen from Starbucks that contained

13  their personal information. Id. at 1140, 1142.  Unlike here, specific allegations in Krottner

14  showed the plaintiffs faced an imminent risk of identity theft: when they sued, someone had

15  already attempted to use a plaintiff's social security number to open a new account. Id. at 1141-

16  42.  Corcoran does not allege anything comparable.  And unlike identity theft cases, in which it is

17  reasonable to infer that the third party who steals or hacks a computer will likely misuse the

18  information he obtains, it is not reasonable to infer that a third party college coach will likely

19  abuse student-athletes simply because he is a coach.  See Remijas v. Neiman Marcus Grp., LLC,

20  794 F.3d 688, 693 (7th Cir. 2015) ("Why else would hackers break into a store's database. . .?").

21       Corcoran has also failed to plausibly allege the second standing requirement: that her

22  "increased risk" of sexual abuse is "fairly traceable" to the NCAA's alleged "failure to enact

23  policies."  Opp. at 13; Lujan, 504 U.S. at 569.  To make that contention would improperly depend

24  on an entirely "speculative chain of possibilities," Clapper, 568 U.S. at 414, none of which

25  Corcoran even alleges here: that a current or future women's rowing coach at Princeton is a bad

26  actor; that Princeton's own policies would not deter the coach from abusing Corcoran; and that,

27  absent additional NCAA policies on abuse, this bad actor coach would abuse Corcoran.

28       Because Corcoran has not alleged any facts showing she has standing, her claims should be

1    dismissed or stricken.  Aldrich, Bevins, and Johnson concede they do not have standing to seek an

2    injunction, so their claim for injunctive relief should also be dismissed or stricken.

3    **VI.     PLAINTIFFS' CLAIMS ARE TIME-BARRED**

4           **A.     Plaintiffs' Choice-of-Law Analysis Is Incorrect**

5           It is undisputed that this Court should apply California's choice-of-law rules.  Opp. at 15.

6    For the statute of limitations issues, this requires application of California's borrowing statute

7    (Cal. Civ. Proc. Code § 361) and related rules—not the government interest test, as Plaintiffs

8    suggest.  See Cossman v. DaimlerChrysler Corp., 108 Cal. App. 4th 370, 376 (2003).

9           Aldrich's reliance on McCann v. Foster Wheeler, 48 Cal. 4th 68 (2010), Opp. at 15, fails.

10   McCann holds that the government interest test applies only where "section 361 does not mandate

11   application of another jurisdiction's statute of limitations."  Id. at 87.  Aldrich's claims "aros[e]

12   in" Indiana and Arizona, and Section 361 thus "mandates" application of those states' limitations

13   periods.  Cal. Civ. Proc. Code § 361; MTD at 11.  Nor is it a condition, as Aldrich suggests, Opp.

14   at 15 n.3, that the borrowing statute only applies when a claim is barred by the law of the foreign,

15   but not forum, state.  See G&G Prods. LLC v. Rusic, 902 F.3d 940, 947 (9th Cir. 2018) (applying

16   section 361 where claim barred in both fora).  It is immaterial that the California Supreme Court

17   has not decided whether accrual is governed by California law when the borrowing statute applies;

18   as G&G notes, under Cossman, California law applies in this context.  Id. at 948 n.6.

19          Bevins and Johnson suggest that the government interest test also governs their tolling

20   arguments, but offer no authority for this point.  Opp. at 21 n.5 & 23 n.6.  Nor do they provide any

21   reason why this court should depart from the straightforward rule applied in Hatfield v. Halifax

22   PLC, 564 F.3d 1177, 1184 (9th Cir. 2009) ("Normally, when a foreign jurisdiction's limitations

23   period is found to apply, that jurisdiction's tolling laws will also apply.").

24          **B.     Even Under Plaintiffs' Preferred Choice of Law, Their Claims Are Untimely**

25          **Aldrich.**  California law applies to Aldrich's accrual argument under the discovery rule.

26   See MTD at 12-14.  But even under Aldrich's preferred law (Arizona), her claims are untimely,

27   under both the discovery rule and Arizona's tolling statute (A.R.S. § 12-502).  First, Arizona's

28   tolling statute—cited nowhere in the FAC—tolls the limitations period while a plaintiff is a minor

1   or of "unsound mind."  But tolling for "unsound mind" is almost never invoked by Arizona courts.

2   Aldrich cites only one such case, which is factually very different from ours.  In <u>Doe v. Roe</u>, 191

3   Ariz. 313 (1998), the plaintiff suffered severe sexual abuse by her father from age eight to fifteen

4   and repressed all memory of the abuse.  <u>Id.</u> at 315-16.  After experiencing flashbacks, she initially

5   denied the abuse, became suicidal, was hospitalized for psychiatric treatment, and had to quit her

6   job because she was unable to perform her duties.  <u>Id.</u> at 316.  The court explained that there are

7   "two separate inquiries that may evince an unsound mind: (1) inability to manage daily affairs, and

8   (2) inability to understand legal rights and liabilities."  <u>Id.</u> at 326.

9         Aldrich does not invoke the first prong of "unsound mind."  Opp. at 17.  She alleges only

10   that she was "not able to comprehend her legal rights until the fall of 2019."  FAC ¶ 329.  This

11   legal conclusion need not be credited.  <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  Unlike in

12   <u>Doe</u>, Aldrich does not allege that she repressed all memories of her abuse or that she denied the

13   abuse after recovering additional memories.  Her hospitalization, which occurred in 2019 *after* her

14   claims allegedly accrued, FAC ¶ 324, cannot revive claims that were already 20 years old.

15         Nor can Aldrich benefit from Arizona's discovery rule.  Arizona law is clear that a sexual

16   abuse claim accrues "when the plaintiff becomes aware of the 'what' and the 'who' elements of

17   the claim, i.e., the conduct constituting the sexual abuse and the identity of the abuser."  <u>See</u> <u>Nolde</u>

18   <u>v. Frankie</u>, 192 Ariz. 276, 283 (1998) (citation omitted).  Aldrich alleges that, unlike the plaintiff

19   in <u>Doe</u>, she repressed only "the majority of her memories of Rembao's sexual contact with her,"

20   FAC ¶ 316; that this repression occurred not immediately but "[a]fter she left the University of

21   Arizona," <u>id.</u>; and that she first recognized Rembao's conduct as sexual abuse in 2019, <u>id.</u> ¶ 319.

22   Other specific allegations, <u>see</u> MTD at 13, reflect that Aldrich knew in real time that a "wrong

23   occurred."  <u>Doe</u>, 191 Ariz. at 323.  Because Aldrich has known since before 2000 of the "conduct

24   constituting sexual abuse" (sexual contact that made her uncomfortable) and the "identity of the

25   abuser" (Rembao), her claims accrued decades ago.  <u>Nolde</u>, 192 Ariz. at 283.  At a minimum,

26   Aldrich had a "reasonable basis for believing that a claim exist[ed]," <u>Doe</u>, 191 Ariz. at 322, when

27   she was a student-athlete, and—unlike the plaintiff in <u>Doe</u> who immediately pursued therapy after

28   recovering her first memory, <u>id.</u> at 325—did not take action to investigate further, as the discovery

1   rule requires, id. at 322, 324 (plaintiff "charged with a duty to investigate with due diligence").

2       **Bevins/Johnson.**  Indiana and Texas law apply to whether Bevins and Johnson can invoke

3   equitable estoppel, fraudulent concealment, or equitable tolling, and those defenses are not

4   available under Indiana or Texas law to revive their claims.  MTD at 12, 14-15.  But even under

5   Plaintiffs' preferred California law, their claims remain untimely.  They claim UT "intentionally

6   misled" them in its investigation of Rembao and "took multiple steps to ensure that Plaintiffs did

7   not pursue their claims."  Opp. at 23 & 21.  But UT's actions in investigating Rembao provide no

8   basis for applying estoppel or tolling *against the NCAA*.  Plaintiffs concede these doctrines require

9   "wrongful conduct on the part of the defendant" or "one of its agents or representatives."  Id. at 21

10   & 24 (emphasis omitted).  Contrary to Plaintiffs' suggestion, id. at 25, Plaintiffs allege no facts

11   showing that the NCAA controlled UT, that UT was acting as the NCAA's agent, or that the

12   NCAA was in any way involved in the investigation.  See Part I, supra; see also Rose v. Giamatti,

13   721 F. Supp. 906, 919 (S.D. Ohio 1989) (MLB not liable for Commissioner's disciplinary

14   investigation because MLB "has absolutely no control over the Commissioner in disciplinary

15   matters").  John R. v. Oakland Unified Sch. Dist., 48 Cal. 3d 438, 447 (1989) is inapposite, as it

16   was undisputed there that the teacher was an agent of the school district.

17       Bevins and Johnson argue that equitable estoppel and fraudulent concealment also apply

18   because the NCAA knew of the "prevalence" of sexual abuse by coaches but failed to adopt a

19   policy to prohibit sexual relationships between students and coaches.  Opp. at 23.  This argument

20   fails because it assumes that the NCAA owes student-athletes a duty to protect them from sexual

21   abuse by coaches, which is incorrect as explained in Part VII, infra.  The case Bevins and Johnson

22   rely upon is distinguishable.  Opp. at 23 (discussing Langston v. Mid-Am. Intercollegiate Athletics

23   Ass'n, No. 16 C 8727, 2020 WL 1445631, at *7 (N.D. Ill. Mar. 25, 2020)).  Applying Kansas law,

24   the Langston court found the plaintiff adequately pled equitable estoppel where he alleged that the

25   NCAA had concealed facts from football players regarding risks of concussive hits.  Id. at *7.

26   Here, Plaintiffs do not allege the NCAA concealed anything.  In addition, the premise of the

27   plaintiff's arguments in Langston was that, as compared to players, the NCAA was "in a superior

28   position to know of and mitigate the risks of concussions."  Id. at *3.  Bevins and Johnson do not

1    allege that the NCAA had superior knowledge regarding the risks of sexual abuse, nor could they,

2    as it is undisputed that Bevins and Johnson knew in 2000 that they had suffered sexual abuse.

3         Moreover, Plaintiffs' opposition fails to show that Bevins and Johnson were "ignorant of

4    the true state of facts."  Javor v. Taggart, 98 Cal. App. 4th 795, 804 (2002), as modified (May 23,

5    2002) (equitable estoppel unavailable where plaintiff "keenly aware of the wrong done to him"

6    and made various attempts to rectify it); see also Rita M. v. Roman Catholic Archbishop, 187 Cal.

7    App. 3d 1453, 1461 (1986) (fraudulent concealment inapplicable because plaintiff was "at all

8    times aware of the relevant facts").  To the contrary, Plaintiffs already pled their knowledge:

9    Bevins and Johnson were aware they had been sexually abused by Rembao in 2000, FAC ¶ 287;

10   Johnson reported his misconduct to UT that same year, id. ¶ 330; and Bevins participated in the

11   investigation, id. ¶¶ 300-302.  Plaintiffs' opposition is silent regarding these allegations.

12        Bevins' and Johnson's renewed request for this Court to "create" a new "victimization

13   exception," Opp. at 25, should be denied, MTD at 15-16.  Plaintiffs' attempt to distinguish Guar.

14   Tr. Co. of N.Y. v. York, 326 U.S. 99 (1945) simply reaffirms that no such exception currently

15   exists.  Opp. at 26.  And Plaintiffs offer no response to the NCAA's contention that their proposed

16   exception, even if created, would not salvage Bevins' and Johnson's claims.  MTD at 16.

17   **VII.   THE NCAA AND ITS BOARD DO NOT OWE A LEGALLY ACTIONABLE DUTY
         TO SUPPORT PLAINTIFFS' NEGLIGENCE-BASED CLAIMS**

18

19        Whether the NCAA owes a duty to protect student-athletes like Plaintiffs is "a question of

20   law to be determined by the trial judge."  See Tibbs v. Huber, Hunt & Nichols, Inc., 668 N.E.2d

21   248, 250 (Ind. 1996).  Thus, contrary to Plaintiffs' contention, Opp. at 28, the Court may resolve

22   this legal question on a motion to dismiss.  See, e.g., Spierer v. Rossman, 798 F.3d 502, 513 (7th

23   Cir. 2015) (affirming dismissal of negligence claim for failure to allege duty under Indiana law).

24        **A.     California Law Does Not Apply**

25        Plaintiffs' conclusory arguments that California law applies are unavailing.  See Opp. at

26   27.  Plaintiffs leave unaddressed the NCAA's argument that California did not have *any*

27   significant contact with Plaintiffs' claims.  See MTD at 16-17.  Plaintiffs carry the burden to make

28   this antecedent showing, which is "necessary to ensure that application of California law is

1    constitutional."  See Mazza v. Am. Honda Motor Co., 666 F.3d 581, 589-90 (9th Cir. 2012).

2         Plaintiffs incorrectly assert "there is no conflict" between California and Indiana duty law

3    because both states balance foreseeability, the parties' relationship, and "various public policy

4    considerations."  Opp. at 27.  Plaintiffs ignore that the "public policy considerations" in

5    California's analysis are seven distinct factors that are not required by Indiana's analysis.  See

6    Rowland v. Christian, 69 Cal. 2d 108, 112-13 (1968).  In contrast, Indiana calls for courts to

7    consider broadly defined "public policy concerns," which vary by case.  See, e.g., Webb v. Jarvis,

8    575 N.E.2d 992, 997 (Ind. 1991) (policy of physician's loyalty to his patient).  Likewise, Texas,

9    Arizona, and New Jersey do not consider the same Rowland factors—an argument left

10   unanswered by Plaintiffs.  MTD at 18.

11        Plaintiffs fail to address the NCAA's balance-of-interests analysis for all but the negligent

12   misrepresentation/omissions claim.  See MTD at 17-18.  For that claim, Plaintiffs concede that,

13   because the NCAA "made certain omissions and misrepresentations from its Indiana

14   headquarters," Indiana has an interest in applying its own law.  See Opp. at 33.  Plaintiffs then

15   assert California has a stronger interest because it applies its negligent misrepresentation law

16   "more broadly."  See id. California's more plaintiff-friendly law does not grant it a greater interest

17   in applying its law to this case.  See Mazza, 666 F.3d at 592 (district court erred in applying

18   California law when it provided "more comprehensive consumer protection").  To the contrary,

19   Indiana has a superior interest in applying its law when the alleged misrepresentations or

20   omissions occurred in Indiana.  Id. at 593 ("the place of the wrong has the predominant interest").

21   Indiana law thus applies to the issue of duty for all of Plaintiffs' negligence claims.

22        **B.**       **Plaintiffs Fail to Allege the Required Duty of Care Under Indiana Law**

23        Each of Plaintiffs' four theories of duty fails under Indiana law.  *First*, the NCAA did not

24   "expressly undert[ake] a duty to protect its student-athletes" from third parties or from every

25   aspect of athletic life by making statements in governing documents, on its website, or in

26   testimony about how it will protect the well-being of student-athletes.  See Opp. at 27.  Indiana

27   has already rejected the idea that broad, aspirational statements about protecting others give rise to

28   a duty.  See MTD at 21-22 (citing Smith, 9 N.E.3d at 160, Yost v. Wabash Coll., 3 N.E.3d 509,

521 (Ind. 2014), and <u>Lanni v. NCAA</u>, 42 N.E. 542, 553 (Ind. App. 2015)).  Plaintiffs counter that <u>Lanni</u> involved an accident and not sexual abuse, <u>see</u> Opp. at 29, but this is irrelevant to the core holding, which Plaintiffs leave unaddressed:  namely, that providing information and guidance to athletes is insufficient to show a sports association has "[a]ctual oversight and control" over athletes to protect them from injuries.  <u>Lanni</u>, 42 N.E.3d at 553.  Similarly here, Plaintiffs have not adequately alleged that the NCAA, by making general statements about protecting athletes, assumed a duty of "actual oversight and control" to protect student-athletes from sexual abuse.

*Second*, Plaintiffs fail to show a duty under Indiana's <u>Webb</u> analysis.  As to the first <u>Webb</u> factor—the relationship between the parties—Plaintiffs assert that the "NCAA is in the best position to ensure" a safe environment for student-athletes.  <u>See</u> Opp. at 28.  Although Plaintiffs make several allegations about *coaches'* control over athletes, <u>see</u> FAC ¶¶ 45, 46, Plaintiffs nowhere allege that *the NCAA* has "direct oversight and control" over student-athletes, as required to impose a duty.  <u>See</u> <u>Yost</u>, 3 N.E.3d at 521.  Indeed, Plaintiffs' own authority supports that colleges and universities—not a national, voluntary membership association like the NCAA—are better positioned to care for students' welfare.  <u>See</u> <u>Regents of Univ. of Cal. v. Superior Court</u>, 4 Cal. 5th 607, 621 (2018) ("Colleges have a superior ability to provide [student] safety.").

Plaintiffs similarly fail to allege that the NCAA has the requisite "direct oversight and control," including any "day-to-day management," over college coaches.  <u>See</u> <u>Yost</u>, 3 N.E. at 521.  Even if the NCAA has the ability to sanction coaches for NCAA rule violations, <u>see</u> Opp. at 30, that narrow ability does not amount to a right to control coaches' "day-to-day" actions.  <u>See</u> <u>Smith</u>, 9 N.E.3d at 164 ("The national fraternity's role in imposing post-conduct sanctions does not establish the right to control for purposes of creating an agency relationship."); <u>see also</u> <u>Barenborg</u>, 33 Cal. App. 5th at 86 (similar).

To attempt to show foreseeability of the harm—the second <u>Webb</u> factor—Plaintiffs identify the U.S. Olympic Committee's and other sports organizations' prohibitions on coach-athlete relations.  <u>See</u> Opp. at 31.  But a handful of non-collegiate organizations prohibiting coach-athlete relationships fails to show, as a matter of law, there was a "probability or likelihood" of sexual abuse.  <u>See</u> <u>Goodwin v. Yeakle's Sports Bar & Grill, Inc.</u>, 62 N.E.3d 384, 392 (Ind. 2016).

1       *Third*, for their fiduciary duty claim, Plaintiffs do not address the fact that neither Indiana

2   nor California has recognized fiduciary relationships between national associations of colleges and

3   universities and student-athletes.  <u>See</u> Opp. at 32.  Nor could they:  it is implausible to suggest that

4   the NCAA maintains a fiduciary relationship with 400,000 student-athletes on nearly 1,100

5   campuses in 50 states.  Plaintiffs dismiss <u>Schmitz v. NCAA</u>, 67 N.E.3d 852, 870 (Ohio Ct. App.

6   2016) as based on a heightened standard for fraud, but its core premise has been accepted by

7   courts under ordinary pleading standards.  <u>See</u> <u>Flood v. NCAA</u>, No. 15-CV-00890, 2015 WL

8   5785801, at \*11 (M.D. Pa. Aug. 26, 2015), <u>report and recommendation adopted</u>, 2015 WL

9   5783373 (Sept. 30, 2015) ("[C]ourts have flatly rejected the notion that the relationship between

10  student-athletes, colleges, and the NCAA somehow rises to the level of a fiduciary relationship.").

11      *Fourth*, Plaintiffs assert Indiana courts have "indicated a willingness to allow claims for

12  personal injuries beyond direct relationships" to support a duty for their "negligent

13  misrepresentations and omissions" claim.  FAC (Count IV); Opp. at 33 (citing <u>Passmore v. Multi-</u>

14  <u>Mgmt Servs., Inc.</u>, 810 N.E.2d 1022, 1025 (Ind. 2004)).  But <u>Passmore</u> (a case involving negligent

15  employment references) does not offer a response to the NCAA's argument that Indiana does not

16  recognize negligent misrepresentation claims outside the context of employment or professionals.

17  <u>See</u> MTD at 23.  Plaintiffs also ignore the NCAA's additional arguments, including that Plaintiffs

18  have not identified the required misrepresentations by the NCAA to support their claim or the

19  requisite relationship to show a duty to disclose allegedly material facts.  <u>See</u> MTD at 23.

20  **VIII.**   <u>**THERE IS NO CONTRACT BETWEEN THE NCAA AND STUDENT-ATHLETES**</u>

21      Plaintiffs' opposition does nothing to salvage their contract claims.

22      *Express/Implied Contract.*  In its opening motion, the NCAA argued that neither the

23  Student-Athlete Statement form nor the Division I Manual contains any promises from the NCAA

24  to student-athletes.  Instead, the form is a tool to verify an athlete's eligibility, whereas the Manual

25  explains that it is "<u>the responsibility of each member institution</u>"—not the NCAA—to care for

26  student-athlete welfare.  MTD at 24-25.  Plaintiffs do not rebut these plain facts; instead, they

27  repeat the FAC's conclusory allegations that are belied by the very documents it references.

28      The cases Plaintiffs cite are inapposite.  Opp. at 34.  In those cases, plaintiffs did not attach

the form or Manual, nor were they discussed in the motions to dismiss.  <u>See</u> Compl. at 25-27, <u>Big</u> <u>Sky Conf. v. Weston</u>, No. 17-cv-04975 (N.D. Ill. June 8, 2017), ECF No. 1; <u>Id.</u>, Motion to Dismiss at 9-11 (N.D. Ill. Dec. 14, 2017), ECF No. 19; Compl. at 29-31, <u>Richardson v. Se. Conf.</u>, No. 16-cv-09980 (N.D. Ill. Aug. 8, 2016), ECF No. 1; <u>Id.</u>, Motion to Dismiss at 10-12 (N.D. Ill. Dec. 14, 2017), ECF No. 23.  But here, the Court has the benefit of the actual documents Plaintiffs contend are contracts.  The documents clearly do not create contractual obligations.

***Third-Party Beneficiaries.***  Plaintiffs wrongly assert the NCAA concedes that the Manual constitutes a contract with member institutions.  Opp. at 34.  Not so.  But if it did, the Manual still would not create an enforceable obligation from the NCAA to *student-athletes* because, as discussed above, the Manual does not include any provisions in which the NCAA makes affirmative promises to student-athletes.  Instead, the Manual consists of a set of rules and bylaws passed by member institutions to govern their relationship with the NCAA, including through clarifying that member institutions, rather than the NCAA, are responsible for student-athlete welfare.  The question is not whether student-athletes benefit from those rules and bylaws.  Rather, it is whether the NCAA and member institutions intend student-athletes, as third-party beneficiaries, "should receive a benefit which might be enforced in the courts."  <u>Broadway Maint.</u> <u>Corp. v. Rutgers, State Univ.</u>, 90 N.J. 253, 259 (1982).  Plaintiffs have not demonstrated an intent to create this kind of contractual right of performance in student-athletes.  <u>See</u> <u>Wagner v. Tex. A</u> <u>& M Univ.</u>, 939 F. Supp. 1297, 1316 (S.D. Tex. 1996).  Instead, they rely on broad statements of principle, such as "the Principle of Student-Athlete Well-Being" and a commitment to initiate athletics programs for student-athletes.  <u>See</u> Opp. at 34-35.  These are precisely the kind of broad commitments held to be insufficient to confer students with third-party beneficiary status.  <u>Hairston v. Pac-10 Conf.</u>, 101 F.3d 1315, 1320 (9th Cir. 1996).

Plaintiffs' citations either contradict their position or are, again, inapposite.  Opp. at 35.  In <u>Rose</u>, for example, the court found student-athletes were *not* third-party beneficiaries.  <u>See</u> <u>Rose v.</u> <u>NCAA</u>, 346 F. Supp. 3d 1212, 1229 (N.D. Ill. 2018) (dismissing third-party beneficiary claims against the NCAA).  Plaintiffs' other cases never considered the language of the Manual or limited their analysis to certain eligibility requirements.  <u>See, e.g.</u>, <u>Knelman v. Middlebury Coll.</u>, 898 F.

1  Supp. 2d 697, 715 (D. Vt. 2012), <u>aff'd</u>, 570 F. App'x 66 (2d Cir. 2014).

2  **IX.      THE NCAA IS NOT VICARIOUSLY LIABLE FOR REMBAO'S ACTIONS**

3          Plaintiffs fail to establish that the NCAA is vicariously liable for Rembao's actions.

4          *First*, Plaintiffs concede that vicarious liability and ratification require an agency or

5  employment relationship between Rembao and the NCAA.  Opp. at 36, 39.  But Plaintiffs do not

6  allege that the NCAA had "the right to discharge [Rembao] at will, without cause," considered

7  "strong evidence in support of an employment relationship."  <u>S. G. Borello & Sons, Inc. v. Dep't</u>

8  <u>of Indus. Relations</u>, 48 Cal. 3d 341, 350 (1989) (quotation and citation omitted).  Instead, they

9  allege that the NCAA promulgates rules and regulations that affect the terms of Rembao's

10  employment and can impose post-conduct discipline for violations.  Opp. at 36.  But California

11  courts have consistently held such powers insufficient to create an agency relationship.  <u>See</u>

12  <u>Patterson</u>, 60 Cal. 4th at 499 (rules and regulations); <u>Barenborg</u>, 33 Cal. App. 5th at 85 (rules,

13  regulations, and ability to impose post-conduct discipline).  Plaintiffs do not grapple with this

14  controlling authority, and thus have not plausibly alleged an employment or agency relationship.

15          *Second*, even if there were an employment relationship (which there is not), Plaintiffs fail

16  to explain how Rembao's alleged conduct was within the scope of that relationship given

17  controlling law that, "[g]enerally, the courts have not imposed vicarious liability for sexual

18  assaults or misconduct of employees."  <u>Doe 1 v. City of Murrieta</u>, 102 Cal. App. 4th 899, 907

19  (2002).  Plaintiff relies heavily on <u>Mary M. v. City of L.A.</u>, 54 Cal. 3d 202 (1991), Opp. at 37, but

20  courts have rejected attempts to expand that holding beyond the admittedly "unique" context of

21  police officers.  <u>See</u> <u>Daza v. L.A. Cmty. Coll. Dist.</u>, 247 Cal. App. 4th 260, 269 (2016) (assault of

22  student by college guidance counselor during counselling session was outside the scope of

23  employment).  Plaintiffs also cite <u>Lu v. Powell</u>, 621 F.3d 944 (9th Cir. 2010), Opp. at 37, which is

24  consistent with this rule.  <u>See</u> <u>Doe v. Uber Techs., Inc.</u>, No. 19-cv-03310, 2019 WL 6251189, at

25  *5 (N.D. Cal. Nov. 22, 2019) (explaining that <u>Lu</u> does not expand California law because asylum

26  officers exercise similar coercive power as the police).

27          Plaintiffs argue that Rembao's alleged abuse of Plaintiffs all took place (1) in the course of

28  track meets/other school-sanctioned activities or (2) while performing "coaching" or physical

1   therapy.  See Opp. at 38.  But the California Supreme Court has rejected vicarious liability for

2   sexual misconduct under nearly identical situations.  In John R., 48 Cal. 3d 438, the court rejected

3   vicarious liability where a teacher sexually assaulted a student participating in an "officially

4   sanctioned extracurricular program."  Id. at 441, 449.  In Lisa M., the court rejected vicarious

5   liability in a case involving an ultrasound technician who committed a sexual assault during an

6   examination, holding the assault "did not *arise out of* the performance of the examination,

7   although the circumstances of the examination made it possible."  Lisa M. v. Henry Mayo

8   Newhall Mem'l Hosp., 12 Cal. 4th 291, 301 (1995).  The same is true here:  Rembao's alleged

9   decisions to exploit Plaintiffs do not *arise out of* his performance of any duties related to coaching.

10  Plaintiffs make no attempt to distinguish this controlling authority.

11      Instead, Plaintiffs rely on Morin v. Henry Mayo Newhall Memorial Hospital, 29 Cal. App.

12  4th 473 (1994), which the California Supreme Court *reversed* in Lisa M.; a case that relied on that

13  since-reversed holding, see Beliveau v. Caras, 873 F. Supp. 1393, 1400 (C.D. Cal. 1995) (citing

14  Morin, 29 Cal. App. 4th 473); as well as other cases that have been criticized or limited in

15  application.  Compare Doe v. Uber Techs. Inc., 184 F. Supp. 3d 774 (N.D. Cal. 2016) with Doe v.

16  Uber Techs., Inc., 2019 WL 6251189, at *5 (criticizing the former case as a misapplication of Lisa

17  M.); see also Uber Techs., 2019 WL 6251189, at *5 (also distinguishing Lu because it was not

18  clear the court's vicarious liability holding was about the officer's sexual assault).

19      *Finally*, Plaintiffs ignore the point raised in the opening motion that there is no plausible

20  allegation that the NCAA knew about Rembao's alleged abuse so it could not ratify that alleged

21  conduct.  In the FAC, Plaintiffs offer no evidence that they told the NCAA about the abuse in the

22  two decades prior to filing this litigation.  Instead, Plaintiffs rely on the fact that UT knew about

23  Rembao's conduct, arguing that this is sufficient.  See Opp. at 39.  But as explained above, UT's

24  conduct cannot be attributed to the NCAA.  See supra Part I; Part VI.B.  Here, the NCAA did not

25  and could not have ratified Rembao's conduct because there is no allegation that it was put on

26  notice of the conduct or any facts that should have led it to investigate further.  See Edmunds v.

27  Atchison, T. & S.F. Ry. Co., 174 Cal. 246, 250 (1917) (no ratification on a failure to discipline

28  theory where the principal has no notice and opportunity to investigate the wrongful conduct).

1

DATED:  August 17, 2020                    MUNGER, TOLLES & OLSON LLP

2

3                                          By:      */s/ Carolyn Hoecker Luedtke*
                                               CAROLYN HOECKER LUEDTKE
4                                          Attorneys for Defendants The National Collegiate
                                           Athletic Association and The Board of Governors of
5                                          the National Collegiate Athletic Association

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28