UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ERIN ALDRICH, LONDA BEVINS, JESSICA JOHNSON, AND BEATA CORCORAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, THE BOARD OF GOVERNORS OF THE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, and JOHN REMBAO,<br><br>Defendants. | Case No. 1:20-cv-02310-JRS-MPB<br><br>Judge:   Hon. James R. Sweeney II |

**REPLY IN SUPPORT OF MOTION TO POSTPONE SCHEDULING CONFERENCE, HOLD L.R. 16-1(C)(1) IN ABEYANCE, AND/OR STAY DISCOVERY**

The National Collegiate Athletic Association ("NCAA") and its Board of Governors' ("the Board") (collectively, the "NCAA Defendants") submit this reply in support of their motion to postpone the scheduling conference and hold Local Rule 16-1(c)(1) deadlines in abeyance, or in the alternative to stay discovery pending resolution of the NCAA Defendants' anticipated motion to dismiss the Second Amended Complaint.  Plaintiffs oppose the motion and argue that the Court should proceed because they believe their claims will survive any motion to dismiss.  But Plaintiffs mischaracterize which issues have been already decided in this case and which issues will be presented to the Court in the upcoming motion to dismiss.  And they fail to explain how they will be prejudiced by postponing the scheduling conference and staying discovery until the resolution of the motion to dismiss.  The NCAA Defendants respectfully submit that the Court should reject these arguments and wait to set a scheduling conference until after deciding the NCAA Defendants' motion to dismiss—a decision that could materially affect the contours of this case and any resulting discovery.  The parties have requested that the

briefing for the motion to dismiss be completed on January 8, 2021 so that motion will be ready for resolution in a matter of months.  If the Court proceeds with a scheduling order or a Case Management Plan ("CMP") before the pleadings are resolved, the NCAA Defendants respectfully request that the Court stay discovery.

I.  **WAITING UNTIL THE PLEADINGS ARE RESOLVED WOULD BE EFFICIENT AND COULD SAVE JUDICIAL RESOURCES**

It makes sense for the Court to hold the scheduling conference in abeyance and wait to receive the CMP until after it hears and decides the NCAA Defendants' motion to dismiss.  Plaintiffs' arguments to the contrary are not persuasive.

*First*, Plaintiffs are simply incorrect that the NCAA Defendants' motion could not dispose of the case in its entirety.  The NCAA Defendants' motion will assert multiple grounds that would dispose of the entire case—the same grounds asserted in the Northern District of California prior to the case being transferred to this Court due to lack of jurisdiction there.  These grounds are lack of standing, statute of limitations, and failure to state a claim.  The Northern District of California did not rule on any of these bases for dismissal with respect to the NCAA Defendants.  Instead, that court concluded it lacked personal jurisdiction over the NCAA Defendants, dismissed the case as to them, transferred the case to this Court, and did not reach the current Defendants' other grounds for seeking dismissal.

The Northern District of California ruled on the motion to dismiss filed by another defendant in that case, John Rembao, and rejected Rembao's statute of limitations arguments.  This ruling *for a different defendant* does not bind the NCAA Defendants.  It does not have any preclusive effect or even persuasive value, because it relied on both law and facts that do not apply to the NCAA Defendants, as set forth in more detail below in Section II.A.  For example, the Northern District of California applied California's choice of law rules in deciding Rembao's motion to dismiss, whereas this Court will apply Indiana's choice of law rules, which lead to a different outcome.  Further, the Northern District of California found that Rembao participated in the University of Texas investigation and held that his participation facially supported a tolling

argument by two Plaintiffs, but there is no corollary allegation that the NCAA Defendants participated in that investigation. Because the Northern District of California's analysis of the statute of limitations arguments advanced by Rembao applied only to him (and not the NCAA Defendants), it has no bearing on the forthcoming motion by the NCAA Defendants.

*Second*, it would, of course, be easy for Plaintiffs and the NCAA Defendants to fill out the proposed CMP form and present it to the Court. The question is whether entering a CMP at this stage would be a worthwhile use of the Court's time. The NCAA Defendants respectfully suggest that it would not be. For the reasons stated below, a motion to dismiss could dispose of the case in its entirety, or at the very least result in substantially narrowed claims if the Court were to agree, for example, that certain claims are time-barred or certain Plaintiffs and associated putative subclasses should be dismissed and/or struck. Therefore, it would be most efficient for the Court to enter a CMP after the motion to dismiss is adjudicated. Furthermore, if the Court approves the proposed briefing schedule submitted by the parties, there will be no substantial delay or actual prejudice to Plaintiffs, as all briefing on the motion to dismiss will be submitted on January 8, 2021.

Plaintiffs quote extensively from the Southern District of Indiana's Attorney Handbook's discussion of the CMP, arguing that the Handbook's preference that the parties conduct discovery without supervision from the Court means, for some reason, that a scheduling conference should proceed. Opp. at 5-6. But Plaintiffs ignore the Handbook's stated preference that the CMP result in setting a trial date "only one time." Attorney's Handbook at 21, U.S. District Court for the Southern District of Indiana (updated Sept., 2019), https://www.insd.uscourts.gov/sites/insd/files/Attorney%20Handbook.pdf ("Very often the court, in consonance with the case management plan and in a particular case, will set a case for trial only one time. This deadline places significant responsibilities on counsel to adhere diligently to pretrial schedules.") In light of the Handbook's preference for setting a trial date only one time, the NCAA Defendants respectfully suggest that the requirement to submit a CMP should be held in abeyance, and that the scheduling conference should not be held, until the pleadings are

3

resolved and the CMP can be set without needing to account for potentially multiple, months-long rounds of dismissal and amended pleadings. Doing so would avoid the Court needing to set the case for trial more than once and conserve both the Court and the parties' resources.

## II.   A DISCOVERY STAY MAKES SENSE HERE

Discovery stays are within the discretion of the District Court, and courts often exercise that discretion to stay discovery where a motion to dismiss has been filed. *Dillinger, L.L.C. v. Elec. Arts, Inc*., No. 1:09-cv-01236-SEB-JM, 2010 WL 1945739, at *1 (S.D. Ind. May 11, 2010). "A stay of discovery is appropriate where the motion to dismiss can resolve the case, where ongoing discovery is unlikely to produce facts necessary to defeat the motion, or where the motion raises a potentially dispositive threshold issue, such as a challenge to the plaintiff's standing." *Duneland Dialysis LLC v. Anthem Ins. Cos., Inc*., No. 4:09-CV-36-RLM-PRC, 2010 WL 1418392, at *2 (N.D. Ind. Apr. 6, 2010) (internal quotation and citation omitted). Here, all three circumstances are true: the motion to dismiss can resolve the entire case, discovery is unlikely to produce facts that can defeat the motion to dismiss, and the motion will raise standing, statute of limitations, and other potentially dispositive threshold issues. Accordingly, the Court should grant the motion and stay discovery.

### A.   A Stay Could Simplify the Issues Before the Court

Plaintiffs contend that a stay will not simplify or streamline the issues in the case because "the NCAA does not have a basis for dismissing all claims against all Plaintiffs in one stroke." (ECF No. 120 at 11 ("Opp.").) It is unclear why Plaintiffs make this argument. It is simply incorrect. The NCAA has asserted and will assert that Plaintiffs' Second Amended Complaint suffers from multiple threshold deficiencies, which taken together would eliminate all parties and causes of action from the case. The NCAA Defendants will argue that the statute of limitations results in the dismissal of three of the four Plaintiffs (each of whom bring claims based on decades-old allegations), and that lack of standing will result in the dismissal of all injunctive relief claims for three of the four Plaintiffs (the former student-athletes) and all claims for the fourth Plaintiff (a current student-athlete who alleges no future injury). These two arguments

taken together result in the dismissal of the entire case. In addition, Defendants have *more* arguments to defeat various claims for failure to state a claim. Those arguments need to be analyzed by each cause of action, but they provide a further basis for the dismissal of the entire Complaint. The NCAA Defendants asserted all of these arguments before the Northern District of California, but that court did not rule on them because it did not have jurisdiction and so dismissed the case against the NCAA Defendants for lack of personal jurisdiction and transferred the case to this Court.

It is true, as Plaintiffs claim in their opposition, that the Northern District of California denied Rembao's motion to dismiss and rejected *Rembao's* statute of limitations argument. But that is irrelevant to this Court's analysis because that court never ruled on statute of limitations with respect to the NCAA Defendants. Indeed, Plaintiffs concede that the Northern District of California did not decide the statute of limitations issues *as to the NCAA*. (Opp. at 4 n.2.) *See Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 532 (7th Cir. 1982) (law of the case only applies to issues that have been "litigated and decided").

The parties will have the opportunity to brief this issue more fully in connection with the NCAA Defendants' motion to dismiss and, as Plaintiffs acknowledge, it is premature to decide it now. (Opp. at 2 ("[T]he preclusive effect of Judge Davila's ruling need not be resolved today").) But, in short, the NCAA is not bound by the Northern District of California's decision on Rembao's statute of limitations arguments—nor could it be, as the Northern District of California concluded there was no personal jurisdiction over the NCAA. (ECF No. 72 at 21.) Furthermore, the Northern District of California decided the statute of limitations argument on a different legal basis that is not present in this Court. In the motion to dismiss, the NCAA intends to raise the following arguments:

*First,* in ruling on the NCAA's motion to dismiss, this Court will apply different law than what the Northern District of California applied in ruling on Rembao's motion to dismiss. The Northern District of California applied California's choice of law rules, which led to the application of Arizona tolling law for Aldrich's claims and California tolling law for Bevins and

5

Johnson's claims.  (ECF No. 72 at 22-24; *id.* at 25.)  As the NCAA will explain in its motion to dismiss, this Court applies Indiana's choice of law rules, which require application of Indiana law—not Arizona or California law—to the statute of limitations analysis.  *See Autocephalous Greek–Orthodox Church of Cyprus v. Goldberg & Feldman Fine Arts, Inc.*, 717 F. Supp. 1374, 1385 (S.D. Ind. 1989), *aff'd*, 917 F.2d 278 (7th Cir. 1990).  In short, the Northern District of California found the statute of limitations may not have run for Aldrich through an application of an Arizona state statute tolling the statute of limitations for people of "unsound mind," but that Arizona state statute will not apply under Indiana law in this forum.  Similarly, the Northern District of California found that Bevins and Johnson's claims were potentially timely based on California's equitable tolling doctrine—which also does not apply in this forum.  The application of Indiana law to the statute of limitations issues raised by the NCAA Defendants will require a different analysis by this Court.  As a result, Judge Davila's decision on the statute of limitations for Rembao is irrelevant in this case as to the NCAA Defendants.

      Moreover, the relevant allegations regarding the NCAA's conduct are different from the relevant allegations about Rembao's conduct.  The Northern District of California hinged its equitable tolling decision as to Bevins and Johnson on the "obvious inference" based on the allegations in the First Amended Complaint "that Defendant Rembao knew about and maybe even participated in the manipulation" inherent in UT Austin's investigation.  (ECF No. 72 at 27.)  The Court based this assessment on allegations that Rembao admitted to inappropriate touching but was still "cleared" in the UT report, suggesting that he had been a "participant" in the alleged whitewashing.  (*Id.*)  There are no comparable allegations in the SAC as to the NCAA Defendants and so this Court will need to employ different analysis with the NCAA Defendants than the Northern District of California employed with Rembao.  The result of this Court's analysis of the statute of limitations claim for the NCAA Defendants need not and should not follow the same path as the Northern District of California's analysis of the claims by Bevins and Johnson.

6

In sum, this Court is not bound by the Northern District of California's holding on the limitations period, meaning statute of limitations is a potentially threshold issue that could eliminate the former student-athlete Plaintiffs' claims in their entirety leaving only a case against current student-athlete Corcoran who alleges no abuse or threat of abuse.

The NCAA Defendants will also raise standing, another threshold issue that could eliminate the former student-athlete Plaintiffs' claims for injunctive relief, and Plaintiff Corcoran's claims in their entirety. The three former student-athlete plaintiffs have no standing to assert claims for injunctive relief because there is no threatened injury to them as former student-athletes. And current student-athlete plaintiff Corcoran has no standing because she alleges no harm and no threat of harm. She is simply a rower at Princeton without sufficient standing to assert her claims.

Finally, the NCAA Defendants will raise the Board of Governors' capacity as an entity to be sued under Rule 17(b). A ruling in the NCAA's favor on any of these issues could eliminate parties from the case or substantially narrow the issues before the Court. For example, if Defendants prevail on their standing challenge, then injunctive relief will no longer be a live issue in the case. Conversely, if Defendants prevail on statute of limitations, the issue of Coach John Rembao's conduct and the Rembao Class's claims involving his conduct will be eliminated from the case. And if the NCAA Defendants prevail on their challenge to the Board of Governors' capacity to be sued, for example, that will eliminate an entire area of motion practice and discovery—that is, the liability of the NCAA Board of Governors. Accordingly, a favorable ruling on the motion to dismiss could significantly streamline the issues before the Court.

### B. Plaintiffs Will Not Be Prejudiced by a Stay

Plaintiffs argue strenuously that they will be prejudiced by a discovery stay. But in support of this argument, they argue merely that (1) their claims involve important policy issues, (Opp. at 10), and (2) the NCAA's arguments are factual, (*id.* at 10-11). Neither argument establishes prejudice: that is, that Plaintiffs will be in any way "tactically disadvantaged" or otherwise worse off because of a stay. *Madbak v. Anthem Ins. Cos. Inc.*, No. 1:16-cv-03197-

SEB-MPB, 2017 WL 5075262, at *1 (S.D. Ind. May 23, 2017) (Brookman, J.) (internal citation omitted).

*First*, Plaintiffs contend that the serious nature of the policy issues involved, and their accompanying claim for injunctive relief, means that they would be prejudiced by a stay. The NCAA Defendants agree that sexual abuse is an extremely serious public policy issue. But Plaintiffs do not contend that they intend to move for emergency relief and do not point to any specific need that they have for discovery now beyond the fact that they would like to proceed to discovery. In support of their argument, Plaintiffs cite *U.S. ex rel. Robinson v. Indiana Univ. Health Inc.*, No. 1:13-cv-02009-TWP-MJD, 2015 WL 3961221, at *6 (S.D. Ind. June 30, 2015). But in that case, the Court did not rely solely on the importance of the policy issues involved to find that the plaintiff would be prejudiced by a discovery stay: rather, the Court found that a discovery stay would prejudice the plaintiff because the court "already set deadlines for discovery, for dispositive motions, and for trial," and had "little inclination to extend these deadlines." Plaintiff thus "face[d] serious pressure to prepare her case in an expeditious manner," *id.*, and would actually, tangibly be prejudiced in prosecuting the action. Similarly, *Red Barn Motors, Inc. v. Cox Enterprises, Inc.*, No. 1:14-cv-01589-TWP-DKL, 2016 WL 1731328, at *3 (S.D. Ind. May 2, 2016), cited by Plaintiffs for the proposition that the Court should consider prejudice to the judicial system as a whole, found such prejudice because the case was already set for trial, and "[e]ven a short stay of discovery would seem to jeopardize the case management deadlines and trial setting." *Id.*

This case is differently situated from *Robinson* and *Red Barn Motors*. Here, no deadlines have been set except for motion to dismiss briefing where there is a requested briefing schedule. Further, as to three of the four plaintiffs, the allegations are based on conduct from 1996 to 2000, and for Corcoran there is no allegation of any misconduct by any coach. That means that there is not an issue of time sensitivity in terms of discovery, nor are there any discovery or trial deadlines. There is simply no basis for proceeding with a scheduling conference, CMP, and

8

discovery prior to the Court deciding what, if any, issues will go forward in this litigation so that deadlines can be structured around the scope of any remaining case.

*Second*, Plaintiffs cannot seriously contend that they need the discovery to respond to Defendants' motion to dismiss in light of what Plaintiffs claim are factual disputes in the anticipated motion (and tellingly, they do not seem to: they contend that they will be prejudiced, but make no argument that they need discovery to respond to the pending motion to dismiss). (Opp. at 9.) Plaintiffs essentially dispute that the NCAA Defendants' motion to dismiss can be decided as a matter of law and argue that it instead involves factual disputes that are inappropriate for resolution on a motion to dismiss. *Id.* Plaintiffs are free to make an argument to that effect in opposing the NCAA's motion to dismiss. But Plaintiffs do not require any discovery to *make* that argument in the first place. *Gekas v. Vasiliades*, No. 10-3066, 2012 WL 5948679, at *1 (C.D. Ill. Nov. 28, 2012) (holding a discovery stay was appropriate where plaintiff contended he needed discovery to counter a statute of limitations argument presented in a motion for judgment on the pleadings, as, like in a motion to dismiss under Rule 12(b), plaintiff was required to "rely on his allegations" in defending against the motion); *Dillinger, L.L.C.*, 2010 WL 1945739, at *1 (staying discovery where plaintiff expressed confidence that they will prevail in the motion to dismiss, as neither "this motion nor this judge should address the merits of the parties' arguments made there," and although plaintiff contended they would be prejudiced by a stay, they did not contend that they needed discovery to respond to the pending motion).

The NCAA Defendants' motion to dismiss will not (and cannot) argue that Plaintiffs' claims should not proceed because Plaintiffs cannot prove the substance of their fact allegations through discovery. Rather, the NCAA Defendants' motion will contend that even if Plaintiffs proved their allegations, they would not be entitled to relief. Plaintiffs mischaracterize the dispute between themselves and the NCAA Defendants in claiming otherwise. To take one example, the NCAA Defendants previously moved to dismiss the vicarious liability claims because the *kind* of facts that Plaintiffs allege regarding the NCAA's control over coaches—that

9

is, the ability to impose post-conduct discipline and set general standards—does not create an agency relationship as a matter of law.  (ECF 55 at 37; ECF 65 at 27.)  The Court can agree with that argument or it can disagree; but whether Plaintiffs can, through discovery, prove the substance of their allegations that the NCAA has the ability to impose post-conduct discipline and set general standards should not impact the Court's resolution of the legal question of whether that ability creates an agency relationship in the first place.

The Supreme Court, in deciding the *Iqbal* and *Twombly* cases, explained that the reason to insist that a plaintiff plead facts showing a plausible entitlement to relief at the 12(b)(6) stage is to *prevent* costly discovery: "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (internal quotation and alteration omitted).  Put differently, if a court believed that discovery would reveal evidence suggesting a plausible entitlement to relief, it would deny the motion to dismiss.  *Id.* at 556 ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.").  The fact that Plaintiffs have failed, three attempts in, to plead facts demonstrating a plausible entitlement to relief is not a reason they should *get* discovery; instead, the very purpose behind the Supreme Court's decisions in *Iqbal* and *Twombly* was to prevent such claims from surviving to discovery.  Plaintiffs accordingly fail to show any prejudice from a stay of discovery until the Court can adjudicate the motions to dismiss.

  **C.**   **A Stay Could Significantly Reduce the Burden on the Parties and the Court**

Finally, Plaintiffs' contention that discovery is unlikely to be burdensome in this case does not stand scrutiny.  Plaintiffs represent that they "will likely seek information relating to, *inter alia*, the NCAA's policies and procedures as to sexual abuse and rulemaking, its knowledge of abuse by coaches and handling of abuse allegations by schools, and its control of NCAA member institutions." (Opp. at 12-13.)  There are almost 1,100 NCAA member institutions.

Plaintiffs seek this information over a thirty-year timespan, dating back to 1992. These "allegations" and the "temporal scope of the claims" involved makes clear that "this case is susceptible to burdensome, costly, and contested discovery." *Ashley W. v. Holcomb*, No. 3:19-cv-00129-RLY-MPB, 2019 WL 9673894, at *2 (S.D. Ind. Oct. 31, 2019) (Brookman, J.). This burden, weighed against the lack of any prejudice to Plaintiffs and the potential that the motion to dismiss could dispose of the entire case, if not large swathes of it, favors granting Defendants' motion to stay discovery.

### III. CONCLUSION

For the foregoing reasons, the Court should put in abeyance the CMP and postpone setting the case for a scheduling conference. Alternatively, the Court should stay discovery until the pleadings are resolved.

DATED:  November 2, 2020				FAEGRE DRINKER BIDDLE & REATH LLP


						By:  /s/ Andrea Roberts Pierson
							ANDREA ROBERTS PIERSON
							NICHOLAS B. ALFORD
							FAEGRE DRINKER BIDDLE & REATH LLP
							300 N. Meridian Street, Suite 2500
							Indianapolis, Indiana  46204
							Telephone:	(317) 237-1424
							Facsimile:	(317) 237-1000
							Email:	andrea.pierson@faegredrinker.com
								nicholas.alford@faegredrinker.com

							CAROLYN HOECKER LUEDTKE
							(*pro hac vice*)
							TERRA CASTILLO LAUGHTON
							(*pro hac vice*)
							MUNGER, TOLLES & OLSON LLP
							560 Mission Street, Twenty-Seventh Floor
							San Francisco, California 94105-3089
							Telephone:	(415) 512-4000
							Facsimile:	(415) 512-4077
							Email:	Carolyn.Luedtke@mto.com
								Terra.Laughton@mto.com

							GLENN D. POMERANTZ
							(*pro hac vice*)
							HAILYN J. CHEN
							(*pro hac vice*)
							LAUREN M. HARDING
							(*pro hac vice*)
							MUNGER, TOLLES & OLSON LLP
							350 South Grand Avenue, Fiftieth Floor
							Los Angeles, California 90071-3426
							Telephone:	(213) 683-9100
							Facsimile:	(213) 687-3702
							Email:	Glenn.Pomerantz@mto.com
								Hailyn.Chen@mto.com
								Lauren.Harding@mto.com

						*Attorneys for Defendants The National Collegiate Athletic Association and The Board of Governors of the National Collegiate Athletic Association*

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2020 the foregoing was filed electronically with the Clerk of the Court using the Court's CM/ECF system. Parties may access this filing through the Court's system.

*/s/Andrea Roberts Pierson*