UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ERIN ALDRICH, LONDA BEVINS, JESSICA JOHNSON, AND BEATA CORCORAN, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 1:20-cv-02310-JRS-MPB |
| vs. | |
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION and THE BOARD OF GOVERNORS OF THE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, | Judge:   Hon. James R. Sweeney II |
| Defendants. | |

**DEFENDANTS NATIONAL COLLEGIATE ATHLETIC ASSOCIATION AND ITS BOARD OF GOVERNORS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS AND/OR STRIKE SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................1

II.     FACTUAL BACKGROUND .......................................................................................3

     A.      The NCAA, Its Board of Governors, and Its Member Institutions..........................3

     B.      Plaintiffs Aldrich, Bevins, Johnson, and Corcoran...............................................4

III.    ARGUMENT .............................................................................................................5

     A.      Plaintiffs' Twenty-Year-Old Claims Must Be Dismissed as Untimely..................5

          1.      Indiana Law Applies for Statute of Limitations ......................................5

          2.      Aldrich's Claims Are Not Salvaged by the Discovery Rule or
              Tolling for Legal Disability .................................................................6

              (a)      Aldrich's Claims Accrued More Than Twenty Years Ago ...........6

              (b)      Indiana's Legal Disabilities Statute Does Not Apply ....................8

          3.      Bevins and Johnson Do Not Qualify for an Exception to the Statute
              of Limitations.......................................................................................9

          4.      A Federal Court Should Not Create a New Equitable Exception to
              Excuse Plaintiffs' Untimely State Law Claims .....................................12

     B.      Plaintiffs Lack Standing to Seek Injunctive Relief and Corcoran Lacks
          Standing to Seek Any Relief.................................................................13

     C.      The Board Is Not an Entity with the Capacity To Be Sued ..................................17

     D.      Plaintiffs' Claims Based on Vicarious Liability Fail ...........................................17

          1.      Choice of Law for Vicarious Liability Tort Claims...................................18

          2.      Respondeat Superior Is Inapplicable Because the Member
              Institutions, Not the NCAA, Employed and Controlled Rembao.............18

          3.      Respondeat Superior Is Also Inapplicable Because Sexual Abuse Is
              Outside Rembao's Scope of Employment as a Coach..............................20

          4.      Plaintiffs' Ratification Theory Fails Because There Is No Agency
              Relationship Between Rembao and the NCAA, and the NCAA
               Lacked Knowledge of Rembao's Conduct ..............................................22

     E.      The NCAA and Its Board Do Not Owe a Legally Actionable Duty as
          Required to Support Plaintiffs' Direct Liability Negligence-Based Claims..........24

          1.      Choice of Law for Direct Liability Negligence-Based Claims.................24

# TABLE OF CONTENTS
## (Continued)

Page

2.  Plaintiffs Fail to Establish the Required Duty ...................................26

    (a)  The NCAA and Its Board Owe No Legally Actionable Duty of Care as a Matter of Law to Plaintiffs...............................26

    (b)  The NCAA and Its Board Did Not Assume a Duty to Plaintiffs.......................................................................................29

    (c)  The NCAA Does Not Owe a Fiduciary Duty to Plaintiffs ............31

    (d)  The NCAA Does Not Owe a Duty to Support Plaintiffs' "Negligent Misrepresentation/Omission" Claim ..........................31

F.  Plaintiffs' Contract and Third-Party-Beneficiary Claims Fail..............................32

    1.  Choice of Law for Contract-Based Claims..............................................32

    2.  There Is No Express or Implied Contract Between the NCAA and Student-Athletes.......................................................................................32

    3.  Plaintiffs Are Not Third-Party Beneficiaries of Any Alleged Contract Between the NCAA and Student-Athletes.................................35

## TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Alonso v. Blue Sky Resorts, LLC*,
   179 F. Supp. 3d 857 (S.D. Ind. 2016) ....................................................................15

*Alvarez v. CSX Corp.*,
   No. 10-CV-80, 2013 WL 1870578 (N.D. Ind. May 2, 2013) ..................................11

*Area Transportation, Inc. v. Ettinger*,
   219 F.3d 671 (7th Cir. 2000) ..................................................................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................5, 23

*Autocephalous Greek-Orthodox Church of Cyprus v. Goldberg & Feldman Fine
   Arts Inc.*,
   717 F. Supp. 1374 (S.D. Ind. 1989) .......................................................................5, 6

*Bell v. Keating*,
   697 F.3d 445 (7th Cir. 2012) ..................................................................................15

*Boston v. City of Chicago*,
   No. 86-C-5534, 1988 WL 31532 (N.D. Ill. Mar. 28, 1988) ...................................17

*Bradley v. National Collegiate Athletic Ass'n*,
   249 F. Supp. 3d 149 (D.D.C. 2017) ........................................................................35

*Clapper v. Amnesty International USA*,
   568 U.S. 398 (2013)......................................................................................14, 15, 16

*Doe v. Howe Military School*,
   227 F.3d 981 (7th Cir. 2000) ....................................................................................7

*Doe v. Vigo County*,
   905 F.3d 1038 (7th Cir. 2018) .................................................................................21

*Ernstes v. Warner*,
   860 F. Supp. 1338 (S.D. Ind. 1994) ..........................................................................9

*Filardi v. Loyola University*,
   No. 97 C 1814, 1998 WL 111683 (N.D. Ill. Mar. 12, 1998) ..................................13

*Flood v. National Collegiate Athletic Ass'n*,
   No. 15-CV-890, 2015 WL 5785801 (M.D. Pa. Aug. 26) ........................................31

**TABLE OF AUTHORITIES**
(Continued)

Page

*Flynn v. FCA US LLC*,
   No. 15-CV-0855, 2016 WL 5341749 (S.D. Ill. Sept. 23, 2016) .............................................. 15

*Foster v. Center Township of LaPorte County*,
   798 F.2d 237 (7th Cir. 1986) ................................................................................................ 17

*Frey v. Bank One*,
   91 F.3d 45 (7th Cir. 1996) .................................................................................................. 6, 7

*Gary/Chicago International Airport Authority v. Zaleski*,
   144 F. Supp. 3d 1019 (N.D. Ind. 2015) ................................................................................ 33

*Gaston v. Ghosh*,
   920 F.3d 493 (7th Cir. 2019) ................................................................................................ 22

*Geehan v. Monahan*,
   382 F.2d 111 (7th Cir. 1967) .................................................................................................. 6

*General Building Contractors Ass'n, Inc. v. Pennsylvania*,
   458 U.S. 375 (1982) .............................................................................................................. 18

*Gertz v. Robert Welch, Inc.*,
   680 F.2d 527 (7th Cir. 1982) .................................................................................................. 9

*Guaranty Trust Co. of New York v. York*,
   326 U.S. 99 (1945) ................................................................................................................ 13

*Hairston v. Pacific 10 Conference*,
   101 F.3d 1315 (9th Cir.), as amended (Dec. 19, 1996) ......................................................... 35

*Hall v. National Collegiate Athletic Ass'n*,
   985 F. Supp. 782 (N.D. Ill. 1997) ........................................................................................ 34

*Hansen v. Board of Trustees for Hamilton Se. School Corp.*,
   No. 05-CV-670, 2007 WL 3091580 (S.D. Ind. Oct. 19, 2007) ............................................. 22

*Heslep v. Americans for African Adoption, Inc.*,
   890 F. Supp. 2d 671 (N.D.W. Va. 2012) .............................................................................. 17

*Hurt v. West Lafayette Community School Corp.*,
   450 F. Supp. 2d 900 (N.D. Ind. 2006) .................................................................................... 7

*Indiana Coalition for Public Education - Monroe County v. McCormick*,
   338 F. Supp. 3d 926 (S.D. Ind. 2018) ................................................................................... 16

**TABLE OF AUTHORITIES**
(Continued)

Page

*Knelman v. Middlebury College*,
    898 F. Supp. 2d 697 (D. Vt. 2012)..........................................................35

*Estate of Knox v. Wheeler*,
    No. 05-CV-19, 2005 WL 2043787 (N.D. Ind. Aug. 25, 2005).................18

*Leathermon v. Grandview Memorial Gardens, Inc.*,
    No. 07-CV-137, 2011 WL 2445980 (S.D. Ind. June 15, 2011).............11

*Logan v. Wilkins*,
    644 F.3d 577 (7th Cir. 2011) ..................................................................10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)......................................................................14, 15, 16

*Lynch v. Math-U-See, Inc.*,
    No. 11-CV-233, 2013 WL 796531 (N.D. Ind. Mar. 4, 2013).................25

*McReynolds v. Merrill Lynch & Co.*,
    694 F.3d 873 (7th Cir. 2012) ..................................................................23

*Monger v. Purdue University*,
    953 F. Supp. 260 (S.D. Ind. 1997)..........................................................11

*Mueller v. Apple Leisure Corp.*,
    880 F.3d 890 (7th Cir. 2018) ..................................................................33

*Nelson v. International Paint Co.*,
    716 F.2d 640 (9th Cir. 1983) ....................................................................6

*Pain Ctr. of SE Indiana LLC v. Origin Healthcare Solutions LLC*,
    893 F.3d 454 (7th Cir. 2018) ..................................................................11

*Pinkney v. Thomas*,
    583 F. Supp. 2d 970 (N.D. Ind. 2008) ....................................................23

*Plotkin v. Ryan*,
    239 F.3d 882 (7th Cir. 2001) ............................................................14, 15

*Pramuk v. Purdue Calumet University*,
    No. 12-CV-77, 2012 WL 6552920 (N.D. Ind. Dec. 14, 2012)...............11

*Remy, Inc. v. Tecnomatic, S.p.A.*,
    No. 11-cv-00991, 2012 WL 13032963 (S.D. Ind. Mar. 29, 2012) ..........6

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*Roche Diagnostics Corp. v. Binson's Hospital Supplies, Inc.,*
  No. 17-cv-00949, 2017 WL 4123050 (S.D. Ind. Sept. 18, 2017)............................................32

*Rosenbaum v. Seybold,*
  No. 06-CV-352, 2008 WL 513205 (N.D. Ind. Feb. 22, 2008) ................................................24

*Schott v. Huntington National Bank,*
  914 F. Supp. 2d 933 (S.D. Ind. 2012) ...................................................................................5, 6

*Spierer v. Rossman,*
  798 F.3d 502 (7th Cir. 2015) ...................................................................................................24

*Spokeo, Inc. v. Robins,*
  136 S. Ct. 1540 (2016)..............................................................................................................14

*Theta Chi Fraternity, Inc. v. Leland Stanford Junior University,*
  212 F. Supp. 3d 816 (N.D. Cal. 2016) .....................................................................................17

*United States v. Rathbone Retirement Community, Inc.,*
  No. 08-CV-174, 2009 WL 2147878 (S.D. Ind. July 15, 2009) ...............................................20

*Wisland v. Admiral Beverage Corp.,*
  119 F.3d 733 (8th Cir. 1997) .....................................................................................................6

*Wright v. Associated Insurance Companies Inc.,*
  29 F.3d 1244 (7th Cir. 1994) ...................................................................................................33

*Zander v. Orlich,*
  907 F.3d 956 (7th Cir. 2018) ...................................................................................................20

**STATE CASES**

*Ahuja v. Lynco Ltd. Medical Research,*
  675 N.E.2d 704 (Ind. Ct. App. 1996).......................................................................................33

*Ayres v. Indian Heights Volunteer Fire Department, Inc.,*
  493 N.E.2d 1229 (Ind. 1986) ...................................................................................................35

*Barnett v. Clark,*
  889 N.E.2d 281 (Ind. 2008) .....................................................................................................22

*Beneficial Mortgage Co. of Indiana v. Powers,*
  550 N.E.2d 793 (Ind. Ct. App. 1990).......................................................................................23

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*Cavanaugh's Sports Bar & Eatery, Ltd. v. Porterfield,*
    140 N.E.3d 837 (Ind. 2020) ........................................................................27

*City of East Chicago v. East Chicago Second Century, Inc.,*
    908 N.E.2d 611 (Ind. 2009) ............................................................... *passim*

*City of Indianapolis v. West,*
    81 N.E.3d 1069 (Ind. Ct. App. 2017)..........................................................20, 21

*Collins v. Dunifon,*
    323 N.E. 264 (Ind. Ct. App. 1975) .................................................................9

*Cowe by Cowe v. Forum Group, Inc.,*
    575 N.E.2d 630 (Ind. 1991) ........................................................................16

*Dallas Moser Transporters, Inc. v. Ensign,*
    594 N.E.2d 454 (Ind. Ct. App. 1992)............................................................19

*Doe v. Lafayette School Corp.,*
    846 N.E.2d 691 (Ind. Ct. App. 2006)............................................................22

*Doe v. Shults-Lewis Child & Family Servs., Inc.,*
    718 N.E.2d 738 (Ind. 1999) ..........................................................................7

*Doe v. United Methodist Church,*
    673 N.E.2d 839 (Ind. Ct. App. 1996)..........................................................7, 10

*Duwe v. Rodgers,*
    438 N.E.2d 759 (Ind. Ct. App. 1982)............................................................8

*In re Estate of Neu,*
    588 N.E.2d 567 (Ind. Ct. App. 1992)............................................................31

*Fager v. Hundt,*
    610 N.E.2d 246 (Ind. 1993) ........................................................................8, 9

*Gared Holdings, LLC v. Best Bolt Products, Inc.,*
    991 N.E.2d 1005 (Ind. Ct. App. 2013) ..........................................................16

*Goodwin v. Yeakle's Sports Bar & Grill, Inc.,*
    62 N.E.3d 384 (Ind. 2016) ......................................................................27, 28

*Green v. Perry,*
    549 N.E.2d 385 (Ind. Ct. App. 1990)............................................................18

**TABLE OF AUTHORITIES**
(Continued)

**Page**

*Harmon v. Fisher*,
    56 N.E.3d 95 (Ind. Ct. App. 2016) ........................................32

*Hartford Accident & Indemnity Co. v. Dana Corp.*,
    690 N.E.2d 285 (Ind. Ct. App. 1997)........................................32

*Hubbard Manufacturing Co. v. Greeson*,
    515 N.E.2d 1071 (Ind. 1987) ........................................18, 24, 25

*Huntington Mortgage Co. v. DeBrota*,
    703 N.E.2d 160 (Ind. Ct. App. 1998)........................................31

*Konkle v. Henson*,
    672 N.E.2d 450 (Ind. App. 1996) ........................................21

*Lanni v. National Collegiate Athletic Ass'n*,
    42 N.E.3d 542 (Ind. Ct. App. 2015)........................................30, 31

*Lee v. Estate of Cain*,
    476 N.E.2d 922 (Ind. Ct. App. 1985)........................................6

*Luhnow v. Horn*,
    760 N.E.2d 621 (Ind. Ct. App. 2001)........................................35

*Mathews v. Hansen*,
    797 N.E.2d 1168 (Ind. Ct. App. 2003) ........................................13

*Estate of Mayer v. Lax, Inc.*,
    998 N.E.2d 238 (Ind. Ct. App. 2013)........................................22

*McCalment v. Eli Lilly & Co.*,
    860 N.E.2d 884 (Ind. Ct. App. 2007)........................................32

*Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.*,
    56 N.E.3d 38 (Ind. Ct. App. 2016) ........................................10

*Neal v. IAB Financial Bank*,
    68 N.E.3d 1114 (Ind. Ct. App. 2017)........................................26, 27

*Passmore v. Multi-Management Services, Inc.*,
    810 N.E.2d 1022 (Ind. 2004) ........................................32

*Simon v. United States*,
    805 N.E.2d 798 (Ind. 2004) ........................................24, 25

**TABLE OF AUTHORITIES**
(Continued)

Page

*Smith v. Delta Tau Delta, Inc.*,
  9 N.E.3d 154 (Ind. 2014) ................................................................. *passim*

*Southport Little League v. Vaughan*,
  734 N.E.2d 261 (Ind. Ct. App. 2000) ................................................... 21

*Stropes ex rel. Taylor v. Heritage House Childs. Center of Shelbyville, Inc.*,
  547 N.E.2d 244 (Ind. 1989) ................................................................. 21

*W.H. Barber Co. v. Hughes*,
  63 N.E.2d 417 (Ind. 1945) ................................................................... 32

*Wabash Grain, Inc. v. Smith*,
  700 N.E.2d 234 (Ind. Ct. App. 1998) ................................................... 12

*Webb v. Jarvis*,
  575 N.E.2d 992 (Ind. 1991) ............................................................ 26, 28

*Wilcox Manufacturing Group., Inc. v. Marketing Services of Indiana, Inc.*,
  832 N.E.2d 559 (Ind. Ct. App. 2005) ................................................... 23

*Williams v. Cingular Wireless*,
  809 N.E.2d 473 (Ind. Ct. App. 2004) ................................................... 26

*Yost v. Wabash College*,
  3 N.E.3d 509 (Ind. 2014) ................................................................. *passim*

**FEDERAL STATUTES**

28 U.S.C. § 1406 ........................................................................... 5, 6

28 U.S.C. § 1406(a) ........................................................................... 6

Fed. R. Civ. P. 9(b) ..................................................................... 10, 11

Fed. R. Civ. P. 12(b)(1) ..................................................................... 13

Fed. R. Civ. P. 12(b)(6) ...................................................... 5, 10, 12, 18

Fed. R. Civ. P. 12(f) ......................................................................... 13

Fed. R. Civ. P. 17(b) ...................................................................... 2, 17

Fed. R. Civ. P. 17(b)(3) ..................................................................... 17

**TABLE OF AUTHORITIES**
(Continued)

**Page**

Fed. R. Civ. P. 23(b)(2)...........................................................................................16

**STATE STATUTES**

Ind. Code Ann. § 16-22-3-24 ...................................................................................17

Ind. Code Ann. § 16-23-1-47 ...................................................................................17

Ind. Code Ann. § 21-27-4-2 .....................................................................................17

Ind. Code Ann. § 21-27-5-2 .....................................................................................17

Ind. Code Ann. § 34-11-2-4 .......................................................................................5

Ind. Code Ann. § 34-11-2-7 .......................................................................................5

Ind. Code Ann. § 34-11-2-11 .....................................................................................5

Ind. Code Ann. § 34-11-5-1 .....................................................................................10

Ind. Code Ann. § 34-11-6-1 .......................................................................................8

Ind. Trial Rule 17(E) ...............................................................................................17

**TREATISES**

Restatement (Second) of Torts § 315.......................................................................26

## I.      INTRODUCTION

This is a case originally brought in the Northern District of California by three former student-athletes (Plaintiffs Erin Aldrich, Londa Bevins, and Jessica Johnson) who twenty years ago participated in track and field at the University of Arizona ("UArizona") and the University of Texas at Austin ("UT") and who allege that their coach at UArizona and UT, John Rembao, sexually abused them.  Plaintiffs alleged that the NCAA, its Board of Governors, and Rembao were responsible for the sexual abuse.  In response to the NCAA's initial motion to dismiss and/or strike Plaintiffs' injunctive relief claims for lack of standing filed on May 22, 2020, Plaintiffs amended the Complaint to add as a Plaintiff current student-athlete Beata Corcoran. Corcoran does not allege any connection to Rembao, but alleges she is fearful that someday she may suffer abuse while participating in rowing at her current school, Princeton University. Following the NCAA's successful motion to dismiss the First Amended Complaint for lack of personal jurisdiction, the Honorable Edward J. Davila transferred the case against the NCAA and the Board to this District.  The case against Rembao continues against him in California.

In the Second Amended Complaint (the "SAC"), ECF No. 116, Plaintiffs bring fourteen claims against the NCAA and three claims against its Board.  They argue that the NCAA should have adopted policies to prevent the alleged abuse by Rembao, that the failure to do so constitutes negligence, a breach of contract, and that the NCAA is vicariously liable for Rembao's sexual abuse.  Plaintiffs purport to represent one nationwide class and two subclasses—(1) all student-athletes who participated in any NCAA sport from 1992 to the present ("Nationwide Class"), a class of remarkable scope and size, (2) all female NCAA student-athletes ever coached by Rembao ("NCAA-Rembao Subclass"), and (3) all student-athletes who participate in any NCAA sport during the pendency of this lawsuit ("Current Student-Athlete Subclass").

The NCAA is a voluntary unincorporated association created by member colleges and universities across the country to administer intercollegiate athletics.  The NCAA has the specific powers its members have vested in it.  In defining the NCAA's legislative powers, the NCAA's

members have explicitly retained for themselves the direct responsibility for the health and safety of their student-athletes. The NCAA's role is to provide support to its members in carrying out that retained responsibility, through model policies, educational resources, and forums for members to share approaches. Consistent with the member institutions retaining responsibility for student-athlete health and safety, the Board has adopted a resolution directing athletic departments to follow campus policies and local and state law related to sexual abuse.

Colleges and universities across the country recognize that sexual abuse on their campuses is a serious problem, and the NCAA has supported its member institutions with resources those members can use on their respective campuses to combat sexual abuse. This case is not about whether the NCAA opposes sexual abuse and works to support its member institutions in eradicating it—it does. Instead, this case is about what the NCAA's legal duty is to take action with respect to sexual abuse on campuses nationwide and, more specifically, what the NCAA's legal responsibility is for the alleged sexual abuse by one track coach twenty years ago. The NCAA respectfully submits the SAC is flawed as a matter of law and that all claims against the NCAA and its Board be dismissed and/or stricken.

To begin, the SAC suffers from three global deficiencies. *First*, the former student-athletes' claims are untimely and no exception to the statutes of limitations applies. *Second*, Plaintiffs lack standing to pursue their claim for injunctive relief because three of the four are not current student-athletes and the current student-athlete does not allege a requisite concrete, particularized harm (and thus lacks standing to bring any claim). *Finally*, the Board is not a proper defendant under Federal Rule of Civil Procedure 17(b) and Indiana law.

If the Court gets past these global deficiencies, which the NCAA respectfully suggests it should not, the claims are deficient as a matter of law. *First*, the indirect claims (Counts VIII–XIII) alleging the NCAA is vicariously liable for Rembao's conduct are deficient because Rembao was not the NCAA's agent and even if he was, the alleged abuse was outside the scope of his employment. *Second*, the direct negligence-based claims (Counts I–IV) should be dismissed because the NCAA does not owe a legally cognizable duty to Plaintiffs. *Finally*, the

contract-based claims (Counts V–VII) fail because there is no enforceable contract between Plaintiffs and the NCAA, nor were Plaintiffs third-party beneficiaries of any contract.

## II.     FACTUAL BACKGROUND

### A.     The NCAA, Its Board of Governors, and Its Member Institutions

Colleges and universities created the NCAA as a voluntary unincorporated association, delegating to it the power to administer intercollegiate athletic competition.  Nearly 1,100 schools across the country are members of the NCAA.  (SAC ¶ 82.)  A Board of Governors, comprised of Presidents and Chancellors from schools of various sizes and regions plus five independent Board members, manages the NCAA.  (*Id.* ¶¶ 30–31.)

The participating colleges and universities ("the member institutions") and conference members adopted the NCAA Constitution, which "defines the NCAA's purposes and fundamental policies."  (SAC ¶ 84.)  The NCAA takes action only where its member institutions and conferences have delegated it responsibility, such as setting rules governing the recruitment of athletes, the rules of competition, how postseason competition will work, etc.  The member institutions have *not* delegated responsibility for health and safety or the student-athlete/coach relationship.  Specifically, the Constitution provides it "*is the responsibility of each member institution* to protect the health of, and provide a safe environment for, each of its participating student-athletes."  (*Id.* ¶ 85 (citing NCAA Const., art. 2, § 2.2.3, emphasis added).)  Similarly, it provides it "*is the responsibility of each member institution* to establish and maintain an environment that fosters positive relationship between the student-athlete and coach."  (*Id.* (citing NCAA Const., art. 2, § 2.2.4, emphasis added).)

Consistent with its Constitution, the NCAA's role has been to provide support and educational resources to member institutions so schools can act to better protect the health and safety of everyone on their campuses, including student-athletes, with respect to sexual abuse. The NCAA has emphasized that it is "committed to supporting and working with campuses to develop collaborative programming, resources, tool kits and best practices to create and maintain a safe campus environment."  (SAC ¶ 89.)  For example, the NCAA has assembled commissions

to bring attention to the subject and developed publications and model policies that campuses and their athletic departments can use.  (*See, e.g.*, *id.* ¶¶ 115, 130, 132.)  In addition, the NCAA passed a resolution to support the efforts of member institutions in this space, specifically requiring athletic departments to ensure that all athletics personnel and student-athletes know and follow campus rules related to sexual abuse, along with federal and local laws.  (*Id.* ¶ 131.)

      **B.**    **Plaintiffs Aldrich, Bevins, Johnson, and Corcoran**

The NCAA recognizes the damaging effects of sexual abuse on college students, including student-athletes, and acknowledges the courage it takes for survivors of sexual abuse to come forward.  Here is the conduct Plaintiffs allege in the SAC:

*Aldrich*.  Rembao coached Aldrich at UArizona, from 1996 to 1997.  (SAC ¶ 20.) Aldrich alleges that Rembao engaged in inappropriate sexual compliments and thereafter engaged in various sexual acts with her.  (*Id.* ¶¶ 176–191.)  Rembao left UArizona to transfer to UT.  (*Id.* ¶¶ 191, 198.)  At UT, where Aldrich competed until 2000, Rembao allegedly attempted to continue a sexual relationship, but Aldrich maintained her distance.  (*Id.* ¶¶ 20, 200.)  Aldrich alleges that she did not realize she was sexually abused until 2019, when she watched a documentary.  (*Id.* ¶ 205.)

*Bevins*.  Rembao coached Bevins at UT from 1999 to 2000.  (SAC ¶¶ 22, 278.)  She alleges Rembao psychologically and sexually abused her, including unwanted touching, until she ultimately quit the team and transferred to the University of Arkansas.  (*See id.* ¶¶ 279–315, 317.)

*Johnson*.  Rembao coached Johnson at UT between 1999 and 2000.  (SAC ¶¶ 21, 224.) She alleges he engaged in unwanted sexual touching.  (*Id.* ¶¶ 228, 234, 236–237, 239, 246–251.) In March 2000, Johnson talked to Bevins, "they realized that Rembao was abusing both of them," and they "concluded that they needed to transfer."  (*Id.* ¶¶ 242, 245, 307.)  Johnson also transferred to the University of Arkansas.  Johnson alleges she reported Rembao to UT, UT investigated, and UT found his actions "did not constitute sexual misconduct."  (*Id.* ¶¶ 254–255.)

Plaintiffs Aldrich, Bevins, and Johnson do not allege they informed the NCAA about

their abuse before this lawsuit.  They allege that due to Rembao's conduct, they suffered damages including emotional distress and lost scholarships.  (SAC ¶¶ 416, 432.)  They also ask for an injunction ordering the NCAA to implement new rules.  (*Id*. at 117.)

> **Corcoran.**  Corcoran is a sophomore on the rowing team at Princeton University.  (SAC ¶ 24.)  Corcoran alleges that "[a]lthough [she] has not been subject to sexual harassment from the current Princeton rowing coaching staff," she is fearful that she may be subject to sexual abuse or harassment if the coaching staff changes.  (*Id*.)

## III.   ARGUMENT

Plaintiffs' allegations are insufficient to "allow[] the [C]ourt to draw the reasonable inference that" Defendants are "liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Their claims must be dismissed.

### A.   Plaintiffs' Twenty-Year-Old Claims Must Be Dismissed as Untimely

Statutes of limitations are "favored" in Indiana because they "rest upon sound public policy and tend to the peace and welfare of society."  *Autocephalous Greek-Orthodox Church of Cyprus v. Goldberg & Feldman Fine Arts Inc.*, 717 F. Supp. 1374, 1385 (S.D. Ind. 1989), *aff'd*, 917 F.2d 278 (7th Cir. 1990) (citation omitted).  "[D]ismissal under Rule 12(b)(6) [is] appropriate" when a complaint "contains facts that establish the statute of limitation defense."  *Schott v. Huntington Nat'l Bank*, 914 F. Supp. 2d 933, 939–40 (S.D. Ind. 2012).

Aldrich, Bevins and Johnson's claims all relate to conduct that allegedly occurred more than twenty years ago—well outside the applicable statutes of limitations.  *See* Ind. Code Ann. § 34-11-2-4 (personal injury; two years); Ind. Code Ann. § 34-11-2-11 (contracts in writing; ten years); Ind. Code Ann. § 34-11-2-7 (contracts not in writing; six years).  Indeed, Aldrich, Bevins, and Johnson concede the timeliness of their twenty-year-old claims turns on whether an exception to the limitations period applies.  (SAC ¶¶ 345–389.)  Because no such exception applies, their claims should be dismissed as untimely.

#### 1.   Indiana Law Applies for Statute of Limitations

The Northern District of California transferred this case pursuant to 28 U.S.C. § 1406.

(*See* Order Granting NCAA's Motion to Dismiss (N.D. Cal. Sept. 3, 2020), ECF No. 72 at 21.)

Because it was transferred pursuant to Section 1406, this Court applies the choice-of-law rules of

the transferee court—here, Indiana. *See Remy, Inc. v. Tecnomatic, S.p.A.*, No. 11-cv-00991,

2012 WL 13032963, at *6 (S.D. Ind. Mar. 29, 2012) (law of transferee court applies to § 1406

transfer); *see also Geehan v. Monahan*, 382 F.2d 111, 114 (7th Cir. 1967) (applying choice of

law of transferee court to case transferred under § 1406); *Wisland v. Admiral Beverage Corp.*,

119 F.3d 733, 736 (8th Cir. 1997) ("A § 1406(a) transfer calls for application of the law of the

transferee court . . . ."); *Nelson v. Int'l Paint Co.*, 716 F.2d 640, 643 (9th Cir. 1983) (same).

"Because in Indiana statutes of limitations are procedural in nature, Indiana choice-of-law rules

state that the statute of limitations of the forum state, Indiana, will apply." *Autocephalous*, 717

F. Supp. at 1385; *see also Lee v. Estate of Cain*, 476 N.E.2d 922, 924 (Ind. Ct. App. 1985) ("It is

well settled that the law of the forum state governs in procedural matters and the limitations

statutes, being procedural in nature, fall within the rule.").

### 2. Aldrich's Claims Are Not Salvaged by the Discovery Rule or Tolling for Legal Disability

Aldrich invokes delayed accrual and tolling to try to save her claims, incorrectly relying

on Arizona law. (SAC ¶¶ 346, 358.) But under the applicable law of Indiana, Aldrich's claims

are untimely and there is no basis for accrual or tolling to apply.

### (a) Aldrich's Claims Accrued More Than Twenty Years Ago

Under Indiana's discovery rule, a claim accrues when the plaintiff "knew or, in the

exercise of ordinary diligence, could have discovered that an injury had been sustained as a result

of the tortious act of another." *Schott*, 914 F. Supp. 2d at 939; *see also Frey v. Bank One*, 91

F.3d 45, 46–48 (7th Cir. 1996) (rejecting delayed discovery argument and affirming judgment on

the pleadings). Aldrich asserts that her claims did not accrue until 2019, when she watched a

documentary. (SAC ¶¶ 347–348.) But Aldrich's allegation that "*[a]fter she left the University

of Arizona*" in December 1997, she "repressed *the majority* of her memories of Rembao's sexual

contact with her" is fatal to this argument for two reasons. (*Id.* ¶¶ 198, 345 (emphases added).)

*First*, Aldrich concedes that for some period of time *before* she left UArizona, she retained *all* memories of Rembao's sexual contact.  At a minimum, Aldrich was charged during this period prior to 1998 with a duty to investigate Rembao's conduct, which she did not do.  *See Doe v. United Methodist Church*, 673 N.E.2d 839, 844 (Ind. Ct. App. 1996) ("Doe should have discovered that she had sustained injury as a result of Minister's abusive acts.").

*Second*, Aldrich concedes that, even after leaving UArizona in 1997, she retained—at all times—*some* memories of Rembao's sexual contact.  (SAC ¶ 345 (alleging she repressed "the majority" of her memories, thus acknowledging that she retained some).)  Indiana law is clear that "where the plaintiff actually retains memories of the event, there is nothing to cause a delay in the commencement of a cause of action."  *Doe v. Shults-Lewis Child & Family Servs., Inc.*, 718 N.E.2d 738, 747 n.3 (Ind. 1999); *Doe v. Howe Military Sch.*, 227 F.3d 981, 989–90 (7th Cir. 2000) (affirming judgment on the pleadings on statute of limitations grounds because the plaintiffs "remembered the events of [sexual] abuse").  The memories Aldrich retained after leaving UArizona imposed at least a duty to investigate further.  *See Frey*, 91 F.3d at 46 (notice from bank "created [a] duty to further inquire" into bank's role in the fraudulent scheme).

Aldrich's contention that she did not understand Rembao's conduct to be sexual abuse until March or April 2019 fares no better, for two additional reasons.  (SAC ¶¶ 205, 348.)

*First*, "Indiana does not require that a plaintiff uncover the legal theory for holding a defendant liable for the action to accrue."  *Frey*, 91 F.3d at 47.  Instead, "the plaintiff must only be aware that the defendant caused him injury."  *Id.*; *see also Hurt v. W. Lafayette Cmty. Sch. Corp.*, 450 F. Supp. 2d 900, 903 & n.4 (N.D. Ind. 2006) (rejecting argument that plaintiff "learned for the first time during counseling" that he was the victim of sexual predation where he remembered "the underlying acts").

*Second*, Aldrich's assertion is contradicted by other specific allegations in the SAC, which show that Aldrich understood Rembao's conduct was inappropriate when it occurred.  Aldrich alleges that after she "maintained her distance" at UT, "Rembao stopped trying and the retaliation began."  (SAC ¶ 200.)  She further alleges that by 1999, she was "beaten down by

Coach Rembao" and was "mentally, emotionally, and physically depleted."  (*Id.* ¶ 202; *see also id.* ¶ 201 ("If she didn't jump well, he made her feel unqualified and insignificant—a loser.").)  Aldrich also alleges her roommate reported to UArizona that in 1996, she discovered Rembao hiding in her closet after walking in on Rembao and Aldrich.  (*Id.* ¶¶ 188–190; *see also id.* ¶ 203 (Aldrich "called her parents out of desperation" in 1999 and "her dad jumped on the next plane to support her.").)  Aldrich's allegations tie Rembao's behavior directly to his sexual advances, noting that "[h]e retaliated against her for putting distance between them and not engaging in a sexual relationship."  (*Id.* ¶ 202; *see also id.* ¶¶ 199–200.)  Because Aldrich knew in real time that Rembao was causing her harm, her claims accrued more than twenty years ago.

### (b)   Indiana's Legal Disabilities Statute Does Not Apply

Aldrich alleges, incorrectly relying on Arizona law, that she is entitled to tolling for "unsound mind."  (SAC ¶¶ 358–360.)  Instead, the applicable tolling rule is Indiana's "legal disabilities" statute, because, as discussed in section III.A.1 above, Indiana law governs the statute of limitations analysis in this Court.  Indiana's legal disabilities statute, which is narrower than Arizona's unsound mind statute, does not apply here.

The Indiana statute provides that "[a] person who is under legal disabilities when the cause of action accrues may bring the action within two (2) years after the disability is removed." Ind. Code Ann. § 34-11-6-1.  "[U]nder legal disabilities" is defined as "persons less than eighteen (18) years of age, mentally incompetent, or out of the United States."  *Id.* § 1-1-4-5(24). "Mentally incompetent" is defined as "of unsound mind."  *Id.* § 1-1-4-5(12).  The statute does not currently define "of unsound mind."  Previously, the statute defined "of unsound mind" as "idiots, noncompotes (non compos mentis), lunatics and distracted persons."  *Fager v. Hundt*, 610 N.E.2d 246, 250 n.2 (Ind. 1993) (citing superseded statute) ("The formerly used phrase 'distracted person' was construed to mean 'a person who by reason of his or her mental state is incapable of managing or procuring the management of his or her ordinary affairs.'").  Thus, Courts have recognized that a plaintiff is of "unsound mind" if she is incapable of managing her ordinary affairs.  *Id.*; *see also Duwe v. Rodgers*, 438 N.E.2d 759, 761 (Ind. Ct. App. 1982).

Because Aldrich does not allege that she was ever unable to manage her ordinary affairs, she cannot benefit from Indiana's legal disabilities statute.[1]  *See Ernstes v. Warner*, 860 F. Supp. 1338, 1340 (S.D. Ind. 1994) (noting that "repressed memory is not a disability" in Indiana). Aldrich's hospitalization in 2019 cannot revive claims that were already twenty years old.  SAC ¶ 353; *Fager*, 610 N.E.2d at 250 n.2 (disability after accrual "would not cease, arrest, or interrupt the running of the statute of limitations which had already commenced").

The Northern District of California's ruling denying Rembao's separate motion to dismiss on statute of limitations grounds does not change the analysis.  ECF No. 72 at 27.  The court did not decide the statute of limitations issues *as to the NCAA or its Board*—nor could it, since the court lacked personal jurisdiction over those parties.  *Id.* at 21.  *See Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 532 (7th Cir. 1982) (law of the case only applies to issues that have been "litigated and decided").  The court's ruling is inapplicable also because it applied a different state's law.  Under California's choice of law rules, the Northern District of California applied Arizona's unsound mind tolling statute to Aldrich's claims.  ECF No. 72 at 22–25.  But this Court applies Indiana's choice of law rules, which require application of Indiana law—not Arizona law—to determine the timeliness of Aldrich's claims.  *See supra* section III.A.1.

### 3.    Bevins and Johnson Do Not Qualify for an Exception to the Statute of Limitations

Bevins and Johnson invoke different exceptions.  It is undisputed that their claims accrued more than twenty years ago.  (SAC ¶ 307 ("[I]n or around March 2000, Ms. Bevins and Ms. Johnson admitted to each other that they were both victims of Rembao's sexual and mental abuse.").)  In the summer of 2000, Johnson "submitted a formal complaint to [UT]" about Rembao and Bevins was interviewed as part of UT's investigation.  (*Id.* ¶¶ 254, 320–322.)

Bevins and Johnson contend their claims are timely under three exceptions to the statute

---

[1] This Court should reject any attempt by Aldrich to rely on *Collins v. Dunifon*, 323 N.E. 264, 269 (Ind. Ct. App. 1975) for the proposition that Indiana's legal disabilities statute also applies to individuals who are unable to understand their rights because subsequent case law has not applied this concept, nor is it found in the plain language of the statute.

of limitations—equitable estoppel, fraudulent concealment, and equitable tolling—which they assert were triggered by UT's investigation into Johnson's complaint. (SAC ¶ 372.) Specifically, they allege that UT's report "exonerat[ing] Rembao" was fraudulent, and was "intentionally designed to detract from Rembao's serial predation" and "shame and embarrass" them. (*Id.* ¶¶ 371, 373–374.) These allegations are insufficient as a matter of law. *See Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) (rejecting fraudulent concealment under 12(b)(6)).

In Indiana, fraudulent concealment prevents a defendant from asserting the statute of limitations "when *he has*, either by deception or by a violation of duty, concealed from the plaintiff material facts thereby preventing the plaintiff from discovering a potential cause of action." *City of E. Chi. v. E. Chi. Second Century, Inc.*, 908 N.E.2d 611, 621–22 (Ind. 2009) (emphasis added). Indiana's fraudulent concealment statute similarly provides that the limitations period is tolled "[i]f a person liable to an action conceals the fact from the knowledge of the person entitled to bring the action." *See* Ind. Code Ann. § 34-11-5-1. Relatedly, equitable estoppel prevents a party from relying on the statute of limitations when "*such party* by fraud or other misconduct has prevented a party from commencing his action." *Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.*, 56 N.E.3d 38, 44 (Ind. Ct. App. 2016) (emphasis added). Equitable estoppel also requires "lack of knowledge and of the means of knowledge as to the facts in question." *See id.* at 44–45; *see also United Methodist Church*, 673 N.E.2d at 844 (fraudulent concealment does not apply "[w]hen the plaintiff obtains information that would lead to the discovery of the cause of action through ordinary diligence"). Thus, to invoke fraudulent concealment or equitable estoppel, Bevins and Johnson must allege, at a minimum: (1) misconduct *by the NCAA and its Board* and (2) that they lacked actual or constructive knowledge of the facts underlying their claims. They do not allege either.

*First*, Bevins and Johnson do not allege *the NCAA or its Board* took any action—fraudulent or otherwise—in connection with UT's investigation and report. (SAC ¶¶ 365–381.) Because the SAC contains no allegations regarding the NCAA related to UT's investigation, it could not possibly meet Rule 9(b)'s particularly requirement to sustain a claim against the

10

NCAA or its Board.  *See generally Leathermon v. Grandview Mem'l Gardens, Inc.*, No. 07-CV-137, 2011 WL 2445980, at *9 (S.D. Ind. June 15, 2011) (applying Rule 9(b) to fraudulent concealment tolling).  Further, UT's investigation cannot be attributed to the NCAA, as Plaintiffs do not allege the NCAA had any control over UT's actions in conducting the investigation—let alone the day-to-day control necessary to establish an agency relationship.  *See Smith v. Delta Tau Delta, Inc.*, 9 N.E.3d 154, 164 (Ind. 2014) (no agency relationship between national and local fraternity because, although national fraternity could impose post-conduct discipline on local fraternity, it lacked control over "everyday management and supervision").

> *Second*, Bevins and Johnson do not allege they lacked knowledge of the facts underlying their claims.  Nor could they, in light of the allegations in the SAC: they were aware they had been sexually abused by Rembao in 2000, (SAC ¶¶ 242, 307); Johnson reported his misconduct to UT that same year, (*id.* ¶ 365); Bevins participated in the investigation, (*id.* ¶¶ 320–322); and Rembao admitted to much of the conduct alleged, (*id.* ¶ 368).  Bevins and Johnson assert they did not know there were other victims of Rembao's abuse until October 2019, but this is inconsistent with their allegation that they realized in 2000 "that Rembao was abusing both of them *and others on the team*."  (*Compare id.* ¶ 378 *with id.* ¶ 242 (emphasis added).)  Moreover, this Court found tolling inapplicable on similar facts in *Monger v. Purdue University*, 953 F. Supp. 260 (S.D. Ind. 1997), in which it held that Purdue's investigation of a harassment complaint brought by a student against her professor did not trigger equitable tolling or fraudulent concealment where the student knew she had suffered injury on the date of the harassment, "regardless of the university's determination." *Id.* at 265 & 263 n.3; *see also Pain Ctr. of SE Ind. LLC v. Origin Healthcare Sols. LLC*, 893 F.3d 454, 463 (7th Cir. 2018).

> Bevins and Johnson also assert equitable tolling.  Indiana only recognizes a narrow form of equitable tolling that applies in three limited situations: (1) a timely-filed case in federal court is dismissed for lack of diversity jurisdiction; (2) fraudulent concealment has occurred; or (3) the plaintiff suffers from a legal disability.  *See Alvarez v. CSX Corp.*, No. 10-CV-80, 2013 WL 1870578, at *5 (N.D. Ind. May 2, 2013); *Pramuk v. Purdue Calumet Univ.*, No. 12-CV-77, 2012

WL 6552920, at *5 (N.D. Ind. Dec. 14, 2012) (dismissing untimely claim under 12(b)(6)); *see also Wabash Grain, Inc. v. Smith*, 700 N.E.2d 234, 239 n.9 (Ind. Ct. App. 1998).  Bevins and Johnson have invoked only fraudulent concealment, but this argument fails.  *See supra.*

Again, the Northern District of California's analysis on Rembao's separate motion is inapplicable here.  (*See* ECF No. 72.)  The Northern District of California based its tolling analysis for Bevins and Johnson on alleged facts specific to Rembao that do not apply to the NCAA or its Board.  Specifically, the Northern District of California found that equitable tolling may salvage Bevins and Johnson's claims against Rembao because there was an "obvious inference" based on the allegations in the First Amended Complaint "that Defendant Rembao knew about and maybe even participated in the manipulation" inherent in UT Austin's investigation.  (*Id.* at 27.)  The court based this assessment on allegations that Rembao admitted to inappropriate touching but was still "cleared" in the UT report, suggesting that he had been a "participant" in the alleged whitewashing.  (*Id.*)  There are no comparable allegations in the SAC or comparable rulings in the Northern District of California's order as to the NCAA.  This Court's legal and factual analysis will therefore be different for the NCAA and its Board, and that analysis does not lead to an exception for Plaintiffs' untimely claims.

Moreover, the Northern District of California found Bevins and Johnson's claims potentially timely as to Rembao based on California's broader equitable tolling doctrine.  (ECF No. 72, at 25–27.)  But, as noted above, Indiana—the applicable law here—does not recognize a form of equitable tolling that is implicated by Bevins and Johnson's claims.

### 4.    A Federal Court Should Not Create a New Equitable Exception to Excuse Plaintiffs' Untimely State Law Claims

Plaintiffs also urge this Court to "create" a new exception called the "victimization exception" to benefit Bevins and Johnson.  (SAC ¶ 384; *id.* at 80, header C.)  Plaintiffs assert they are not asking this Court to forge new ground, yet acknowledge that their proposed exception has not been adopted in any jurisdiction.  (*Compare id.* ¶ 382 *with id.* ¶ 386 ("the 'discovery rule' regarding tolling is wholly inadequate, therefore requiring *a judicially created*

12

*exception*") (emphasis added); *id.* ¶ 389 (similar); *id.* ¶ 383 ("the state of the law today" is insufficient).)

This Court should decline Plaintiffs' invitation to create a new rule because a federal court is not positioned to "create" equitable exceptions to state statutes of limitations. *See generally Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 110 (1945) (discussing federal courts' roles in diversity cases and affirming that "if a plea of the statute of limitations would bar recovery in a State court, a federal court ought not to afford recovery"); *Mathews v. Hansen*, 797 N.E.2d 1168, 1171 (Ind. Ct. App. 2003) (noting, on motion to dismiss, that statutes of limitation "are favored" in Indiana). Even if this Court created such an exception, it would not salvage Bevins and Johnson's claims: Plaintiffs' proposed "victimization exception" would toll the limitations period for sexual abuse by someone in a position of power over the victim until the victim is able to "identify the conduct for what it was: sexual abuse." (SAC ¶ 384.) But Bevins and Johnson were aware in 2000 that they had been sexually abused by Rembao. (*Id.* ¶ 307.)

**B.      Plaintiffs Lack Standing to Seek Injunctive Relief and Corcoran Lacks Standing to Seek Any Relief**

This Court should dismiss under Rule 12(b)(1), or in the alternative, strike under Rule 12(f), Plaintiffs' request for an injunction because all four Plaintiffs lack Article III standing to seek such relief. (SAC at 120, Prayer for Relief ¶ VIII.C; Count XIV.) This Court should also dismiss and/or strike all of Corcoran's claims because she lacks standing to bring any claims.

To begin, Aldrich, Bevins, and Johnson, as former student-athletes, lack standing to seek an injunction because they cannot demonstrate a "threat of future injury." *See Filardi v. Loyola Univ.*, No. 97 C 1814, 1998 WL 111683, at *3 (N.D. Ill. Mar. 12, 1998) (former student lacked standing to seek injunction against her former university because she failed to allege a "threat of imminent or future" discrimination). Plaintiffs recognized that their original former student-athlete Plaintiffs lacked standing for injunctive relief and amended their Complaint to add Corcoran, a current student-athlete, albeit one who faces no actual or threatened abuse.

Current student-athlete Corcoran has no standing to assert any claims. She fails to "clearly . . . allege facts" to satisfy the three-part test for standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). *First*, she must allege she has suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). *Second*, she must allege that her injury is "fairly traceable" to the NCAA's actions. *Id.* at 561. *Third*, she must allege that it is "'likely,' *as opposed to merely 'speculative*,'" that her injury will be redressed by a favorable decision. *Id.* (emphasis added). Where, as here, a plaintiff's theory of standing depends on the actions of an independent third party (namely, Corcoran's current or future coach), standing is "'substantially more difficult' to establish." *Id*. at 562; *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) (declining to abandon "our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors"); *Plotkin v. Ryan*, 239 F.3d 882, 886 (7th Cir. 2001) (rejecting plaintiff's theory of injury in part because "[t]here are necessarily many outside unknown influences affecting all aspects" of the claimed injury). Corcoran cannot meet any of the three requirements for standing—let alone the heightened standard implicated here.

**Injury.** In contrast to Aldrich, Bevins, and Johnson, Corcoran acknowledges that she "has not been subject to sexual harassment" by her Princeton rowing coaches. (SAC ¶ 24.) Corcoran must therefore allege a threatened, future injury that is "*certainly* impending" or poses a "substantial risk." *See Clapper*, 568 U.S. at 409, 414 & n.5 (emphasis in original) (cautioning that imminence "cannot be stretched beyond its purpose" to prevent "speculative" claims); *id.* at 414 n.5. Corcoran advances two theories of injury, but neither meets this standard.

*First*, Corcoran alleges that the NCAA's purported failure to implement and enforce certain policies has put her at "increased risk of sexual assault, sexual harassment, and exacerbated emotional trauma." (SAC ¶ 26.) The Seventh Circuit rejected this theory of standing in *Plotkin*, 239 F.3d 882. In *Plotkin*, the plaintiff alleged that employees of the Illinois Secretary of State Office were accepting bribes in exchange for issuing commercial drivers' licenses to unqualified applicants. *Id.* at 883. The plaintiff asserted, among other injuries, that

this misconduct put him at "an increased risk of accidents" as a user of Illinois highways.  *Id.* at 886.  The Seventh Circuit rejected this theory as "too speculative and generalized to constitute an injury-in-fact."  *Id.*  The court noted that if the plaintiff suffered this injury, then so too did all people using Illinois highways.  *Id.*; *see also Flynn v. FCA US LLC*, No. 15-CV-0855, 2016 WL 5341749, *2–3 (S.D. Ill. Sept. 23, 2016) (no standing based on "increased risk of injury or death" from car hacking because there was no substantial risk of injury).  Like in *Plotkin*, Corcoran's theory of "increased risk of sexual assault" would allow all student-athletes, on any team, anywhere in the country—no matter how far removed from an incident of sexual abuse or an abuser—to claim an injury.  Such an injury is not sufficiently "concrete" or "particularized" for standing.  *See Lujan*, 504 U.S. at 560 n.1 ("particularized" means "that the injury must affect the plaintiff in a personal and individual way").

*Second*, Corcoran alleges she is "fearful that she may be subject to sexual abuse or harassment *if* the coaching staff changes."  (SAC ¶ 25 (emphasis added).)  But the Supreme Court in *Clapper* made clear that plaintiffs cannot "manufacture standing" based on subjective fear of "hypothetical future harm that is not certainly impending."  *Clapper*, 568 U.S. at 416 (rejecting standing based on attorneys' self-imposed burdens to protect the confidentiality of their communications with clients abroad based on fear of surveillance).  Consistent with *Clapper*, courts in this Circuit regularly find allegations of subjective fear and anxiety insufficient.  *See, e.g.*, *Flynn*, 2016 WL 5341749, at *2 (rejecting plaintiffs' claim of "anxiety and fear" of injury from car hacking absent a substantial risk of harm); *Alonso v. Blue Sky Resorts, LLC*, 179 F. Supp. 3d 857, 865 (S.D. Ind. 2016) (no standing based on fear of future harm from data breach); *see also Bell v. Keating*, 697 F.3d 445, 454 (7th Cir. 2012) ("a plaintiff's notional or subjective fear" of chilling speech is insufficient for standing).  Corcoran does not allege that any of her current coaches have made her uncomfortable or harassed her in any way, or that any of her peers have been subjected to harassment or abuse by the rowing coaches.  Corcoran cannot establish standing by simply alleging that she fears a hypothetical

15

future event, especially one that depends on the actions of a third party.[2]

      **Traceability and Redressability.**  Even if Corcoran could establish an injury-in-fact, she has not plausibly alleged that it is fairly traceable to the NCAA's alleged "failure to have or enforce appropriate policies and procedures" or that it is likely—as opposed to merely speculative—that a favorable decision in this case will redress her injury.  (SAC ¶ 26; *Lujan*, 504 U.S. at 560–61.)  Corcoran's contention that past incidents of sexual abuse by coaches were "precipitated" by the NCAA's purported "failure to implement or enforce" certain policies and procedures is unsupported by factual allegations.  (SAC ¶ 25.)  Moreover, her position that the NCAA's actions put her at risk depends on an entirely "speculative chain of possibilities," none of which Corcoran even alleges here: for instance, that a current or future women's rowing coach at Princeton is a bad actor; that Princeton's own policies would not deter the coach from abusing Corcoran; and that, absent additional NCAA policies on abuse, this bad actor coach would abuse Corcoran.  *Clapper*, 568 U.S. at 414; *see also Area Transp., Inc. v. Ettinger*, 219 F.3d 671, 673 (7th Cir. 2000) (affirming dismissal for lack of causation and redressability in suit alleging failure to sufficiently sanction third party company); *Ind. Coal. for Pub. Educ. - Monroe Cnty. v. McCormick*, 338 F. Supp. 3d 926, 939–40 (S.D. Ind. 2018) (no causation or redressability under *Lujan*'s heightened standard in case against charter school because there were multiple intervening causes of plaintiffs' claimed loss of students, funding, and diversity).

      Because all Plaintiffs lack standing to seek an injunction, their claims for injunctive relief should be dismissed or, alternatively, stricken.  And because Plaintiff Corcoran lacks standing to seek any relief, her claims should be dismissed or stricken in their entirety.  In addition, the class allegations seeking injunctive relief under Rule 23(b)(2) and the allegations related to the Current Student-Athlete Subclass Corcoran seeks to represent, (*see* SAC ¶¶ 14, 390–392, 400; *id.*

---

[2] For the same reasons Corcoran has not alleged an injury sufficient for Article III, she also fails to allege a cognizable injury under Indiana law, as required for her direct liability negligence and breach of contract claims.  *See generally Cowe by Cowe v. Forum Grp., Inc.*, 575 N.E.2d 630, 636 (Ind. 1991) (negligence requires "injury to the plaintiff"); *Gared Holdings, LLC v. Best Bolt Prods., Inc.*, 991 N.E.2d 1005, 1012 (Ind. Ct. App. 2013) (breach of contract requires damages).

at 120, Prayer for Relief ¶ VIII.C), should also be dismissed or stricken because there is no Plaintiff with standing to assert those claims. *See Foster v. Ctr. Twp. of LaPorte Cnty.*, 798 F.2d 237, 244 (7th Cir. 1986) (dismissing class claims because named plaintiff lacked standing and therefore "cannot qualify as a representative of a class purporting to raise the same claim"); *Boston v. City of Chi.*, No. 86-C-5534, 1988 WL 31532, at *8 (N.D. Ill. Mar. 28, 1988) (same).

### C.    The Board Is Not an Entity with the Capacity To Be Sued

The Court should dismiss or strike the claims against the Board because the Board does not exist separately from the NCAA and thus cannot be sued independently.  Federal Rule of Civil Procedure 17(b) provides that, for parties that are neither individuals nor corporations, a party has the "capacity to sue or be sued" according to "the law of the state where the court is located," here, Indiana.  *See* Fed. R. Civ. P. 17(b)(3).  In Indiana, an unincorporated association may sue or be sued in its common name.  *See* Ind. Trial Rule 17(E).  But no Indiana statute allows for suit against a *board of directors* of an unincorporated association.  Although the Indiana legislature has allowed specific boards to be sued—*e.g.*, boards of certain hospitals, Ind. Code Ann. §§ 16-22-3-24, 16-23-1-47, and boards of trustees of certain universities, Ind. Code Ann. §§ 21-27-5-2, 21-27-4-2—the legislature has not created a general exception for suit against a board of any type of entity or an entity like the NCAA.

Several courts in other jurisdictions have found that boards do not exist separate from their corporate counterparts and thus are not separate legal entities with capacities to be sued under Rule 17(b)(3).  *See Theta Chi Fraternity, Inc. v. Leland Stanford Junior Univ.*, 212 F. Supp. 3d 816, 821 (N.D. Cal. 2016) (granting motion to strike claims against board of fraternity association); *Heslep v. Ams. for African Adoption, Inc.*, 890 F. Supp. 2d 671, 678 (N.D.W. Va. 2012) (dismissing claims under 17(b) against a board because it is not a separate legal entity from the corporation).  This Court should join those courts and dismiss or strike the claims against the Board of Governors, which lacks the capacity to be sued independently.

### D.    Plaintiffs' Claims Based on Vicarious Liability Fail

If this Court does not dismiss the SAC as to the NCAA and its Board under one or more

of the three global defects discussed above, it should dismiss each individual claim under Rule

12(b)(6).  To begin, Counts VIII to XIII rest on a theory that the NCAA is vicariously liable for

Rembao's alleged torts.  These claims fail because Rembao was not the NCAA's agent or

employee, was not acting within the scope of his employment even if he could be considered an

employee (which he cannot), and because the NCAA did not ratify his alleged conduct.

### 1.    Choice of Law for Vicarious Liability Tort Claims[3]

For tort claims, including for those based on theories of vicarious liability such as Counts

VIII to XIII, Indiana uses a modified *lex loci delicti* (place of the wrong) framework.  *See Estate*

*of Knox v. Wheeler*, No. 05-CV-19, 2005 WL 2043787, at *8 (N.D. Ind. Aug. 25, 2005)

(discussing *Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071 (Ind. 1987)).  The first step of this

analysis assesses whether the laws of the different states are "important enough to affect the

outcome of the litigation."  *Id.* (citing *Hubbard*, 515 N.E.2d at 1073).  If there is no conflict, the

law of the forum state applies.  *Id.*  The law on vicarious liability from the forum state (*i.e.*,

Indiana) and the states where Plaintiffs are student athletes (*i.e.*, New Jersey) or were allegedly

harmed by Rembao (*i.e.*, Arizona and Texas) does not differ in ways that will affect the outcome

of this motion to dismiss.  Accordingly, for purposes of this Motion, Indiana law applies to

Plaintiffs' vicarious liability tort claims (Counts VIII to XIII).

### 2.    Respondeat Superior Is Inapplicable Because the Member Institutions, Not the NCAA, Employed and Controlled Rembao

The doctrine of respondeat superior does not apply here because Plaintiffs do not (and

cannot) allege that Rembao was an agent or employee of the NCAA.  *Gen. Bldg. Contractors*

*Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 392 (1982) (respondeat superior does not allow for

"the imposition of liability on a defendant based on the acts of a party with whom it had no

agency or employment relationship").  Under Indiana law, Plaintiffs must allege that Rembao

was the NCAA's agent.  *Green v. Perry*, 549 N.E.2d 385, 389 (Ind. Ct. App. 1990) (respondeat

---

[3] Plaintiffs do not identify under which state's law they seek relief. The choice-of-law analysis in this Motion is for the named Plaintiffs.  The NCAA does not suggest that the same law would apply to putative class members, as the proposed classes include individuals from every state.

superior does not apply to non-servant agents). "A master is a principal who employs an agent to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service." *Dallas Moser Transporters, Inc. v. Ensign*, 594 N.E.2d 454, 456 (Ind. Ct. App. 1992). "Among the indicia of a master-servant [*i.e.*, principal-agent] relationship are the right to discharge, method of payment, supplying of tools by employer, belief by the parties in the existence of a master-servant relationship, control over the means used or result reached, length of employment and the establishing of work boundaries." *Id.* at 457.

Here, Plaintiffs do not allege that an employment relationship existed between Rembao and the NCAA. Instead, they allege that Rembao was employed by UArizona and UT, (SAC ¶¶ 156, 191), that he "worked at several other NCAA schools throughout his career," (*id.* ¶ 157), and that he was employed outside UArizona and UT by USA Track and Field, the Olympic Training Center, and Team USA, (*id.* ¶¶ 163–164). Plaintiffs also do not allege that the NCAA had the right to discharge Rembao, that it supplied his tools in coaching track and field, that it paid him through any method, or that anyone at the NCAA had any right to direct Rembao's day-to-day actions as an athletic coach. Nor do they allege that the NCAA and Rembao believed that they were in an employment relationship. Plaintiffs have thus pled none of the facts that Indiana law considers to be "among the indicia" of a master-servant relationship.

Plaintiffs do allege that the NCAA promulgates and enforces standards regarding the conduct and employment of coaches. (SAC ¶¶ 91–92.) But the Indiana Supreme Court has twice refused to apply respondeat superior in closely analogous situations. In *Smith*, 9 N.E.3d 154, the Court concluded that liability could not be imposed on a national fraternity for actions of the local fraternity or its individual members because the national fraternity lacked the requisite control. The national fraternity offered "informational resources, organizational guidance, common traditions, and its brand to the local fraternity," and had "the right to discipline, suspend, or revoke its affiliation with the local fraternity or its members." *Id.* at 164. The Court nevertheless concluded that the "national fraternity ha[d] no right to direct or control a

19

local fraternity member's personal actions and behavioral choices." *Id.* Accordingly, "[t]he national fraternity's role in imposing post-conduct sanctions [did] not establish the right to control for purposes of creating an agency relationship," *id.*, and the Court concluded that the national fraternity was "not subject to vicarious liability" as a matter of law. *Id.* at 165. Similarly, in *Yost v. Wabash College*, 3 N.E.3d 509 (Ind. 2014), the Court held that a national fraternity's "right to suspend or revoke its affiliation with the local fraternity or its members" and other conduct such as "providing aspirational goals and encouraging good behavior" did not create an agency relationship as a matter of law. *Id.* at 521–22.

Plaintiffs' allegations regarding the NCAA's control of member institutions and their employees are indistinguishable from those the Indiana Supreme Court rejected in *Smith* and *Yost*. Plaintiffs do not allege here that the NCAA has the ability to "direct or control" a coach's "personal actions and behavioral choices." *Smith*, 9 N.E.3d at 164. While Plaintiffs allege the NCAA can enforce its rules against member institutions and coaches, (SAC ¶¶ 91–92), this allegation is equivalent to the "remedial" ability to impose "post-conduct sanctions" or ability to "suspend or revoke . . . affiliation" that the Indiana Supreme Court rejected in *Smith* and *Yost*. *Smith*, 9 N.E.3d at 164; *Yost*, 3 N.E.3d at 522. As a matter of law, Plaintiffs have not plausibly alleged the NCAA has an agency relationship with Rembao, and their vicarious liability claims must be dismissed. *United States v. Rathbone Ret. Cmty., Inc.*, No. 08-CV-174, 2009 WL 2147878, at *2 (S.D. Ind. July 15, 2009) (assessing the sufficiency of the pleadings and holding Plaintiffs "must allege facts demonstrating a principal/agent relationship").

### 3. Respondeat Superior Is Also Inapplicable Because Sexual Abuse Is Outside Rembao's Scope of Employment as a Coach

Even if there were an employment or agency relationship, which Defendants submit there is not, Rembao's conduct falls outside of his employment as a matter of law. Under Indiana law, "liability under a theory of respondeat superior attaches for sexual assault only where the assault occurs during physical, intimate contact required by a job." *Zander v. Orlich*, 907 F.3d 956, 960 (7th Cir. 2018); *City of Indianapolis v. West*, 81 N.E.3d 1069, 1073 (Ind. Ct. App. 2017) (courts

consider "how closely the acts complained of resemble acts the employee was employed to do, and whether the latter tend naturally or predictably to 'melt' or 'ripen' into the former").

Rembao was employed by UArizona and UT as an athletic coach, a job for which Plaintiffs do not allege that close, physical contact is required.  Indeed, Plaintiffs' own allegations are that such conduct was not expected as part of Rembao's role as an athletic coach, and that the UT Austin report was "absurd[]" to conclude otherwise.  (SAC ¶ 369.)  Accordingly, Plaintiffs do not allege the kind of "physical, indeed intimate, contact that a job must require before vicarious liability will attach."  *Doe v. Vigo Cnty.*, 905 F.3d 1038, 1043 (7th Cir. 2018); *Konkle v. Henson*, 672 N.E.2d 450, 457 (Ind. Ct. App. 1996) (priest's sexual assault of youth parishioner outside the scope of his employment although many assaults took place in the church, because there was "no showing that [the pastor] was teaching [the parishioner] or performing any other pastoral acts at the time") *abrogated in part on other grounds as recognized in City of Indianapolis v. West*, 81 N.E.3d 1069, 1073 (Ind. Ct. App. 2017).

This case therefore is distinguishable from those in which courts have found that there was a fact question regarding whether conduct was within the scope of employment: those cases all involved close, physical contact that was required by an employee's professional duties.  In *Stropes ex rel. Taylor v. Heritage House Childrens Center of Shelbyville, Inc.*, 547 N.E.2d 244 (Ind. 1989), for example, the Indiana Supreme Court held that there was a fact question regarding whether a nurse's aide's assault of a patient was within the scope of his employment when the aide's duties included changing the patient's bedding and clothes and the assault occurred during performance of those duties.  *Id.* at 245.  And in *Southport Little League v. Vaughan*, 734 N.E.2d 261 (Ind. Ct. App. 2000), the Court of Appeals held that there was a fact question regarding scope of employment in a case involving molestation by a Little League coach whose duties included fitting athlete uniforms and who used his position of trust to commit sexual molestations.  *Id.* at 270.  But when analyzing these cases in a subsequent case, the Indiana Supreme Court made clear that conduct is not within the scope of employment if it is "not sufficiently associated with" an employee's "employment duties."  The Supreme Court held

that a trustee was not liable for assault committed by an employee where the employee's duties did not require close contact beyond "perhaps a greeting handshake." *Barnett v. Clark*, 889 N.E.2d 281, 286 (Ind. 2008).  The same is true here:  As described above, Plaintiffs allege that Rembao was "not explicitly or impliedly authorized to touch or confine [them]," *id.*, and his conduct therefore falls outside the scope of his employment as a matter of law.

Plaintiffs' allegations that Rembao abused his position and power as a coach to commit sexual assault, (SAC ¶ 128), are also insufficient to establish that this conduct was within the scope of his employment as a coach.  In *Doe v. Lafayette School Corp.*, 846 N.E.2d 691, 702 (Ind. Ct. App. 2006), *abrogated on other grounds by State Farm Mut. Auto. Ins. v. Jakupko*, 856 N.E.2d 778 (Ind. Ct. App. 2006), the court held that a teacher's molestation of student did not subject school to respondeat superior liability although the teacher used the school's equipment and facilities to initiate the relationship.  Applying that holding, the Southern District of Indiana held that allegations that the perpetrator was a plaintiff's "teacher and that the encounters occurred at school" were not enough, as "the Court conclude[d] that something more than use of school facilities is necessary to make the School vicariously liable."  *Hansen v. Bd. of Trs. for Hamilton Se. Sch. Corp.*, No. 05-CV-670, 2007 WL 3091580, at *7 (S.D. Ind. Oct. 19, 2007), *aff'd sub nom. Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599 (7th Cir. 2008). That Rembao may have used his position as a coach employed by an NCAA member institution to initiate his relationship with Plaintiffs does not subject the NCAA to liability for that conduct.

### 4.  Plaintiffs' Ratification Theory Fails Because There Is No Agency Relationship Between Rembao and the NCAA, and the NCAA Lacked Knowledge of Rembao's Conduct

Plaintiffs' attempts to salvage their vicarious liability claims by relying on ratification fail.  (SAC ¶¶ 521–526.)  Ratification is a theory of vicarious liability by which a principal can be responsible for an agent's unauthorized acts.  *Estate of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 255 (Ind. Ct. App. 2013).  Although Plaintiffs plead "Ratification" as a separate count, it is not a cause of action.  *Gaston v. Ghosh*, 920 F.3d 493, 497 (7th Cir. 2019) (holding vicarious liability is not an independent cause of action).  In addition to not being a cause of action, Plaintiffs'

allegations that the NCAA ratified Rembao's conduct fail for two more reasons.

*First*, "[a] ratification does not occur unless it appears that the act was performed for and on behalf of another, and not on account of the actor himself." *Beneficial Mortg. Co. of Ind. v. Powers*, 550 N.E.2d 793, 796 (Ind. Ct. App. 1990). Plaintiffs do not allege that Rembao purported to act on behalf of the NCAA when he committed the acts giving rise to their tort claims against him. Nor could they, as the NCAA condemns sexual abuse. Furthermore, Plaintiffs do not allege that Rembao sexually abused them to benefit the NCAA. Accordingly, the NCAA cannot ratify those acts. *Pinkney v. Thomas*, 583 F. Supp. 2d 970, 981 (N.D. Ind. 2008) (employer could not ratify an employee's intentional tort because the employee did not express that he was committing the tort on behalf of his employer while committing the tort).

*Second*, ratification requires "knowledge of all material facts by the person to be charged with said unauthorized act." *Wilcox Mfg. Grp., Inc. v. Mktg. Servs. of Ind., Inc*., 832 N.E.2d 559, 562–63 (Ind. Ct. App. 2005). Here, Plaintiffs make a single, conclusory allegation of the NCAA's *potential* knowledge. (*See* SAC ¶ 525 (alleging knowledge of Rembao's misconduct "by the NCAA and/or its agents . . .").) The use of the conditional "and/or" confirms Plaintiffs do not have a basis for any allegation about the *NCAA's* knowledge of Rembao's abuse. Nowhere do they allege who informed the NCAA about Rembao's conduct, when, or how, nor do they identify whom the informant told or the basis for considering that person an agent of the NCAA. They do not even allege that the NCAA necessarily had knowledge—rather, they merely allege that the NCAA *or its alleged agents* had knowledge.[4] What is at best a "[t]hreadbare recital[]" of knowledge, "supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, is insufficient and the Court should disregard it. *McReynolds v. Merrill Lynch & Co*., 694 F.3d 873, 886 (7th Cir. 2012) (allegation that company acted intentionally in discriminating was "merely a conclusion, unsupported by the necessary factual allegations to

---

[4] As discussed above, UT's knowledge of Rembao's misconduct cannot be attributed to the NCAA. *See Smith*, 9 N.E.3d at 164–65; *supra* at III.D.2.

support a reasonable inference of discriminatory intent").  In sum, Plaintiffs do not sufficiently allege the NCAA's knowledge of Rembao's unauthorized actions.

    **E.**     **The NCAA and Its Board Do Not Owe a Legally Actionable Duty as Required to Support Plaintiffs' Direct Liability Negligence-Based Claims**

Plaintiffs' direct-liability negligence-based claims (Counts I-IV) assert that the NCAA and its Board should have taken certain steps to protect Plaintiffs from Rembao.  (*See, e.g.*, SAC ¶¶ 403, 418 (alleging the NCCA owed a duty to implement rules).)  But absent a legally-recognized duty owed by the NCAA to Plaintiffs, their direct-liability negligence claims fail.  *See Yost v. Wabash Coll.*, 3 N.E.3d 509, 520 (Ind. 2014).  Plaintiffs' failure to plead that the requisite duty exists here justifies dismissal as a matter of law.  *See Spierer v. Rossman*, 798 F.3d 502, 513 (7th Cir. 2015) (affirming dismissal of negligence claim for failure to allege duty under Indiana law); *Rosenbaum v. Seybold*, No. 06-CV-352, 2008 WL 513205, at *2 (N.D. Ind. Feb. 22, 2008) ("Whether [defendant] had a duty of care to the Plaintiffs . . . is purely a legal question that may potentially be resolved on a motion to dismiss.").

    **1.**     **Choice of Law for Direct Liability Negligence-Based Claims**

Under Indiana's modified *lex loci delicti* (place of the wrong) framework, courts first determine whether the laws of the various states with a connection to the claim are "important enough to affect the outcome of the litigation" such that a conflict exists.  *See Simon v. United States*, 805 N.E.2d 798, 802–05 (Ind. 2004) (discussing *Hubbard*, 515 N.E.2d at 1073).  If a conflict exists, the law of the place of the wrong presumptively applies.  *Id.*  But if the "place of the tort 'bears little connection to' this legal action," courts may apply a different state's law after considering (1) the place where the conduct causing the injury occurred, (2) the residence or place of business of the parties, and (3) the place where the relationship is centered.  *Id.*

The Indiana Supreme Court has applied Indiana law to negligence claims where, as here, the claims focused on the actions of the Defendant.  In *Simon*, 805 N.E.2d at 807, the Court applied Indiana law to negligence claims where plaintiffs were injured in a plane crash outside of Indiana but the alleged negligent conduct by the FAA and air traffic controllers occurred in

Indiana.  The Court reasoned "it is the conduct of the FAA and the air traffic controllers that is at issue, not the conduct of the plaintiffs."  *Id.*  Similarly, in *Hubbard Manufacturing*, 515 N.E.2d at 1074, the Court applied Indiana law where the plaintiff was injured in Illinois and the alleged negligent manufacture of the lift causing the injury occurred in Indiana.  The Court thus held that "Indiana has the more significant relationship and contacts" with the action.  *Id.*

Even assuming there are differences between the states' negligence laws that affect the outcome of this litigation, Indiana law applies to Plaintiffs' direct liability negligence-based claims (Counts I-IV) because the place of the alleged wrong and the conduct causing Plaintiffs' alleged injuries is Indiana.  *See Lynch v. Math-U-See, Inc.*, No. 11-CV-233, 2013 WL 796531, at *4 (N.D. Ind. Mar. 4, 2013) (applying Pennsylvania law, the state where the allegedly tortious conduct occurred, because "the most important factor here is where the conduct causing the injury occurred").  Plaintiffs do not allege any wrongdoing on the NCAA's part taking place in Arizona, New Jersey, or Texas.  Instead, Plaintiffs allege the NCAA's "principal office is located in Indianapolis, Indiana," where it has "500 employees [who] . . . interpret and support member legislation, run all championships and manage programs that benefit student-athletes."  (SAC ¶¶ 28, 29; *see also id.* ¶ 18 (alleging the NCAA "reside[s] and conduct[s] operations in [the Southern District of Indiana]").)  Plaintiffs' negligence-based claims are based on the NCAA's purported failure to "interpret and support member legislation" relating to coach-student sexual abuse.  (*See, e.g.*, *id.* ¶¶ 403, 418 (alleging the NCAA failed to implement certain rules and bylaws relating to coach-student abuse).)  Plaintiffs further allege that the NCAA's "500 employees," who are located at the NCAA's principal place of business in Indianapolis, (*see id.* ¶ 29), include a "60-member enforcement staff" who allegedly pay insufficient attention to serious misconduct such as sexual abuse.  (*Id.* ¶ 142; *id.* ¶¶ 403, 418 (alleging the NCAA failed to "enforce" certain rules and bylaws relating to sexual abuse).)  Accordingly, like in *Simon*, the "gravamen of this case is the allegedly negligent conduct" of the NCAA that allegedly occurred from the NCAA's principal place of business in Indiana.  *See Simon*, 805 N.E.2d at 806.  The

law of Indiana—the place of the wrong and the site of the NCAA's allegedly negligent actions—
thus applies to Plaintiffs' direct liability negligence-based claims (Counts I–IV).

>           **2.      Plaintiffs Fail to Establish the Required Duty**

>                **(a)      The NCAA and Its Board Owe No Legally Actionable Duty of
>                          Care as a Matter of Law to Plaintiffs**

"A duty of reasonable care is 'not, of course, owed to the world at large,' but arises out of
a relationship between the parties." *Williams v. Cingular Wireless*, 809 N.E.2d 473, 476 (Ind.
Ct. App. 2004) (quoting *Webb v. Jarvis*, 575 N.E.2d 992, 997 (Ind. 1991)).  Nor is there a "duty
. . . to control the conduct of a third person as to prevent him from causing physical harm to
another" without a special relationship between the defendant and the third person or the
defendant and the plaintiff.  *See Neal v. IAB Fin. Bank*, 68 N.E.3d 1114, 1118 (Ind. Ct. App.
2017) (quoting Restatement (Second) of Torts § 315).  In determining whether a duty exists,
Indiana courts balance the so-called *Webb* factors: the parties' relationship, the reasonable
foreseeability of the harm, and public policy concerns.  *Webb*, 575 N.E.2d at 995.  All three
*Webb* factors weigh against imposing a duty here.

*First*, the NCAA's relationship with student-athletes is not one that creates a legally
cognizable duty to protect against third-party sexual abuse.  With over 460,000 student-athletes
competing in NCAA sports annually, at more than 1,000 schools, (SAC ¶¶ 82, 395), there is no
allegation (nor could there be) that the NCAA has "direct oversight or control" over student-
athletes like Plaintiffs.  *See Yost*, 3 N.E.3d at 521 (no duty imposed on national fraternity for
incidents by members when the fraternity had no "direct oversight and control" of members and
when relationship was "remote").  Indeed, the NCAA's member institutions and conferences
have delegated to themselves—not the NCAA—the responsibility of overseeing student-athletes'
health and safety.  (SAC ¶ 85 (citing NCAA Const., art. 2, § 2.2.3).)  And although Plaintiffs
vaguely allege the NCAA maintained "control over and responsibility *for intercollegiate sports,*"
(*id*. ¶ 84 (emphasis added)), Plaintiffs have not alleged that the NCAA has any direct supervision
or control over all member institutions' coaches (nor would such an allegation be true).  Plaintiff

Corcoran, for instance, has not alleged that the NCAA directly supervises and controls the actions of Princeton University rowing coaches, as would be required to impose a duty under *Yost*. Nor do Plaintiffs Aldrich, Johnson, and Bevins allege that the NCAA had a "right or duty to control [Rembao's] actions" or that the NCAA was in a "superior position to supervise or protect" Rembao—nor could they, as Rembao was neither an employee nor agent of the NCAA. *See Neal*, 68 N.E.3d at 1121.

      *Second*, the Indiana Supreme Court's reasoning in *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 392 (Ind. 2016), makes clear that the type of harm Plaintiffs allegedly suffered (or Corcoran fears she will suffer) was not reasonably foreseeable such that a national associational entity like the NCAA should have taken precautions to avoid it. To be sure, sexual abuse by those in positions of authority over others is an abhorrent societal issue, both in the college athletics setting and in our nation in general. As in *Goodwin*, where the court acknowledged that, "in the broadest sense, all crimes anywhere are 'foreseeable'" and it "doubt[ed] there exists a neighborhood anywhere in this State which is entirely crime-free," and Plaintiffs argued that "guns are everywhere," *id.* at 394 & n.9, the NCAA has acknowledged, as Plaintiffs allege, that sexual relationships between coaches and student-athletes are a serious problem. (SAC ¶ 53 (citing 2012 Staying in Bounds publication).) But "the mere fact that a particular outcome is 'sufficiently likely' is not enough to give rise to a duty." *Goodwin*, 62 N.E.3d at 392. Instead, foreseeability turns on "whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it." *Id.* (citation omitted); *see also Cavanaugh's Sports Bar & Eatery, Ltd. v. Porterfield*, 140 N.E.3d 837, 842–43 (Ind. 2020) (no duty without notice of "present and specific circumstances that would cause a reasonable person to recognize the risk of an *imminent* criminal act" (emphasis added)). Just as bar owners do not "routinely contemplate" criminal attacks inside their bars, *see Goodwin*, 62 N.Ed.3d at 394, a national association entity does not "routinely contemplate" that the nearly half-million student-athletes around the country are sexually abused by coaches.

27

*Third*, public policy, the final *Webb* factor, strongly counsels against finding a duty for the NCAA.  In *Goodwin*, the court reasoned that, although, "in the broadest sense, all crimes anywhere are 'foreseeable,'. . . . to impose a blanket duty on proprietors to afford protection to their patrons would make proprietors insurers of their patrons' safety which is contrary to the public policy of this state."  *Id*.  The court further reasoned that "such a blanket duty would abandon the notion of liability based on negligence and enter the realm of strict liability in tort."  *Id*.  Similarly here, Indiana courts have consistently expressed a strong public policy against imposing a duty on national entities like the NCAA where the national entity "lack[s] any direct oversight and control" over the individual actors whose conduct causes injury and where "day-to-day management" of those individuals is the responsibility of local entities and not the national entity.  *See Yost*, 3 N.E.3d at 521; *Smith*, 9 N.E.3d at 163 (finding no duty where national fraternity provided educational information and policies on hazing but lacked day-to-day oversight and control over the behavior of local fraternities and its members).  Although sexual abuse is unfortunately "in the broadest sense . . . foreseeable," just like crime in *Goodwin* or fraternity-related hazing in *Yost*, allowing such general foreseeability to turn the NCAA into an "insurer" of safety from sexual abuse is contrary to the public policy of Indiana.

Moreover, imposing a duty here would create a serious disincentive for the NCAA to support its member institutions in combatting sexual abuse.  The Indiana Supreme Court in *Yost* recognized that a national fraternity "should be encouraged, not disincentivized, to undertake programs to promote safe and positive behavior and to discourage hazing and other personally and socially undesirable conduct."  *Yost*, 3 N.E.3d at 521.  The national fraternity in *Yost* had "strongly disapproved of hazing . . . in its printed charters and bylaws" and "through its aspirational enactments and promotional materials," informed its members that its insurance policies prohibited hazing, required that individual members complete trainings on the dangers of hazing, and even retained the power to "issue and suspend charters" and to "discipline or expel individual members of the fraternity."  *Id*. at 520.  Nevertheless, the court reasoned that public policy weighed against finding a duty given the national fraternity's lack of direct

oversight and control over individual fraternity members and given the public policy in favor of encouraging education to promote positive behavior.  *Id*. at 521.  Like the national fraternity in *Yost*, the NCAA has organized commissions to raise awareness about campus sexual abuse, (SAC ¶ 138), and developed publications and model policies that member institutions can use to combat sexual abuse, (*id*. ¶¶ 118, 130–132).  As in *Yost*, these actions "should be encouraged, not disincentivized." *Yost*, 3 N.E.3d at 521.

### (b)   The NCAA and Its Board Did Not Assume a Duty to Plaintiffs

The NCAA has not assumed a duty toward Plaintiffs by reason of its various efforts to assist its member institutions in combatting sexual abuse.  Assumption of duty under Indiana law "requires affirmative, deliberate conduct such that it is apparent that the actor specifically undertook to perform the task that he is charged with having performed negligently." *Yost*, 3 N.E.3d at 517 (citations and internal markings omitted).  "[T]he concept of assumed duty . . . requires a focus upon the specific services undertaken.  While an actor may be accountable for negligence in the performance of certain services actually undertaken, such liability does not extend beyond the undertaking." *Id*. at 521.

Plaintiffs allege the NCAA's duty arises from its constitution, bylaws, and website that allegedly established a duty to protect student-athletes' health and well-being, along with the Board of Governor's "charge" to operate consistent with the NCAA's purpose and the NCAA's "positioning of itself as the exclusive authority in intercollegiate athletics to preserve its goal of preserving amateurism."  (SAC ¶ 403(2)(c).)  Plaintiffs also identify several steps the NCAA has taken to support its member institutions in working to prevent sexual abuse on campuses.  (*See id*. ¶¶ 118, 130–132.)  But none of these specific "undertakings" extend to direct oversight and control of the day-to-day behavior of individual coaches at member institutions.  The Indiana Supreme Court has repeatedly held that the adoption of policies prohibiting misconduct and the creation of educational programs and trainings designed to prevent such misconduct are not specific "undertakings" resulting in the assumption of a duty to protect a plaintiff from such misconduct.  In *Yost*, the Court held that a university's promulgation of policies prohibiting

29

hazing, procedures for disciplining students that violate those policies, and investigations resulting in discipline did not give rise to a specific undertaking to control and protect the plaintiff from the hazing injuries he sustained "or to generally prevent its students from engaging in injurious private conduct toward each other." *Yost*, 3 N.E.3d at 518.  Likewise, in *Smith*, the Court held that "providing information to the local fraternity to discourage hazing and alcohol abuse and disciplining chapters and members for violations" did not show that the national fraternity assumed any duty of "direct supervision and control of the behaviors of its local chapter members." *Smith*, 9 N.E.3d at 162–63.

Even more on point, in *Lanni v. National Collegiate Athletic Ass'n*, 42 N.E.3d 542 (Ind. Ct. App. 2015), a college fencer sued the NCAA following an eye injury at a competition.  The NCAA had, among other things, established rules of competition, modified safety guidelines, and collected data to "provide athletes with a safe competitive environment."  *Id*. at 553.  The court held that "the specific duties undertaken by the NCAA with respect to the safety of its student-athletes was simply to provide information and guidance to the NCAA's member institutions and student-athletes."  *Id*.  Although the steps taken by the NCAA to actively engage its member institutions and student-athletes in how to avoid unsafe practices were "commendable," the court found they did "not rise to the level of assuring protection of the student-athletes from injuries that may occur at sporting events."  *Id*.  The court reasoned that "[a]ctual oversight and control cannot be imputed merely from the fact that the NCAA has promulgated rules and regulations and required compliance with those rules and regulations."  *Id*.  And the court held that "[t]he NCAA's conduct does not demonstrate that it undertook or assumed a duty to actually oversee or directly supervise the actions of the member institutions and the NCAA's student-athletes."  *Id*.

Similarly here, the specific steps identified by Plaintiffs—including NCAA model policies for member institutions' voluntary adoption, (SAC ¶ 118), publications discussing "Athletics' Role in Support of Healthy and Safe Campuses," (*id*. ¶ 132), and commissions to "monitor and track" sexual violence, (*id*. ¶ 138)—are simply informational resources and

guidance for member institutions and student-athletes.  As in *Lanni*, actual oversight and control "cannot be imputed merely from the fact that the NCAA has promulgated rules and regulations and required compliance" with them.  *Lanni*, 42 N.E.3d at 553.  These actions do not, under *Yost*, *Smith*, or *Lanni*, demonstrate that the NCAA specifically undertook or assumed a duty to directly supervise coaches like Rembao and protect student-athletes from them.

### (c)   The NCAA Does Not Owe a Fiduciary Duty to Plaintiffs

Plaintiffs' assertion in Count III (breach of fiduciary duty) that the NCAA owes a fiduciary duty to Plaintiffs arising from a "special relationship founded upon trust and confidence between the NCAA and its student-athletes," (SAC ¶ 434), is incorrect given the narrow circumstances under which Indiana law recognizes fiduciary duties.  A fiduciary relationship requires a "confidential relationship," which exists "whenever confidence is reposed by one party in another with resulting superiority and influence exercised by the other." *Huntington Mortg. Co. v. DeBrota*, 703 N.E.2d 160, 167 (Ind. Ct. App. 1998) (citation omitted). Certain specified relationships create a presumption of influence—for instance, an attorney and client.  *See In re Estate of Neu*, 588 N.E.2d 567, 570 (Ind. Ct. App. 1992).  That type of confidential relationships is not alleged here.  Plaintiffs do not allege facts showing they personally had or have a confidential relationship with the NCAA resulting in influence over them.  Nor could they.  Relationships between the NCAA, a national association of colleges and universities, and student-athletes are not recognized as having this presumption of influence.  *See Flood v. Nat'l Collegiate Athletic Ass'n*, No. 15-CV-890, 2015 WL 5785801, at *11 (M.D. Pa. Aug. 26), *report and recommendation adopted*, 2015 WL 5783373 (M.D. Pa. Sept. 30, 2015) ("[C]ourts have flatly rejected the notion that the relationship between student-athletes, colleges, and the NCAA somehow rises to the level of a fiduciary relationship.").

### (d)   The NCAA Does Not Owe a Duty to Support Plaintiffs' "Negligent Misrepresentation/Omission" Claim

To support their "negligent misrepresentations and omissions claim" (Count IV), Plaintiffs allege the NCAA "concealed" certain allegedly material information.  (SAC ¶¶ 441–

31

442.)  Indiana does not recognize a negligent misrepresentation claim outside of the context of professionals, including but not limited to brokers, attorneys, abstractors, and surveyors, and employer-employee relationships.  *See Roche Diagnostics Corp. v. Binson's Hosp. Supplies, Inc.*, No. 17-cv-00949, 2017 WL 4123050, at *9 (S.D. Ind. Sept. 18, 2017).  Even if it did, Plaintiffs have not identified any affirmative misrepresentations by the NCAA to support their claim.  *See Passmore v. Multi-Mgmt. Servs., Inc.*, 810 N.E.2d 1022, 1025 (Ind. 2004) (negligent misrepresentation requires an "affirmative misrepresentation").  And, as explained above, Plaintiffs have not alleged the requisite relationship to show the NCAA owed a duty to disclose any allegedly material facts.  *See, e.g.*, *Harmon v. Fisher*, 56 N.E.3d 95, 99–100 (Ind. Ct. App. 2016) ("duty to speak" for purposes of constructive fraud may arise from a fiduciary relationship or between a buyer and seller).

### F.    Plaintiffs' Contract and Third-Party-Beneficiary Claims Fail

#### 1.    Choice of Law for Contract-Based Claims

Indiana uses a multi-factored "intimate contact[s]" analysis to determine which law applies to contract claims.  *See W.H. Barber Co. v. Hughes*, 63 N.E.2d 417, 423 (Ind. 1945).  But, "[b]efore entangling itself in messy issues of conflict of laws[,] a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states."  *Hartford Accident & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind. Ct. App. 1997) (citation omitted).  "If the purposes and policies of two potential rules are the same, the forum should apply the forum law."  *Id.*  For purposes of the motion to dismiss, the contract laws of Indiana, Arizona, Texas, and New Jersey do not differ such that it would be important to the outcome of the litigation.  Accordingly, Indiana law applies to Counts V–VII.

#### 2.    There Is No Express or Implied Contract Between the NCAA and Student-Athletes

The Court should dismiss Plaintiffs' breach of express and implied contract claims (Count V and VI) because Plaintiffs have not identified a valid contract between themselves and the NCAA.  *See McCalment v. Eli Lilly & Co.*, 860 N.E.2d 884, 894 (Ind. Ct. App. 2007).  A

mutual manifestation of assent is required for both claims. *Ahuja v. Lynco Ltd. Med. Rsch.*, 675 N.E.2d 704, 708 n.2 (Ind. Ct. App. 1996). Plaintiffs point to the NCAA's Student-Athlete Statement form (hereinafter "form") (SAC ¶ 450), but the form contains no mutual assent between the athlete and the NCAA to enter into a contractual relationship. The form sets out its "purpose" in its header: "[t]o assist in certifying eligibility." (*See* ECF 116-2 at 2, SAC Ex. B at 2.) The form requires student-athletes to attest that they have reviewed the Manual for the portions that "address [their] eligibility." (*Id.* at 2.) It references the Manual, but only the requirements relating to "[t]he conditions [student-athletes] must meet to be eligible and the requirement that [they] sign this form." (*Id.* at 3.) It does not contain *any* affirmative commitment by the NCAA, not even a commitment to process the form—rather, the form states that it is to be returned to the *member institution's* director of athletics and kept there for six years. (*Id.* at 8.) As the Manual explains, while the NCAA "prescribe[s] [the contents]" of the form, the member institution administers the form and maintains the form.[5] (Luedtke Decl., Ex. 1, ECF No. 123-1 at 12 (Bylaw art. 12 § 12.7.2.1); *id.* at 11 (NCAA Const. art. III § 3.2.4.6.1).) Indeed, it is not clear that *Plaintiffs* assented to the alleged contract at all; although they plead the NCAA required student-athletes to sign the statement, they nowhere plead *the Plaintiffs* in fact signed it. (SAC ¶ 450.)

In short, the form does not constitute a contract between the NCAA and student-athletes; instead, it allows member institutions to collect information on students' eligibility to participate

---

[5] The Court may consider the Manual, which contains the NCAA's Constitution and Bylaws, although it is not attached to the SAC. "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss." *Wright v. Assoc. Ins.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (incorporating a contract by reference because it was "repeatedly quote[ed] from and refere[ed] to" in the complaint, and plaintiff's claim was based on an allegation that Defendants interfered with the contract). Here, Plaintiffs contend that the Manual is the source of contractual duties—and Plaintiffs incorporated it by reference through numerous references to it. (*See, e.g.*, SAC ¶¶ 83, 419, 450, 453–456, 465, 467.) The Court may thus consider it. *See Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (incorporating by reference a contract mentioned in a complaint); *Gary/Chi. Int'l Airport Auth. v. Zaleski*, 144 F. Supp. 3d 1019, 1024 (N.D. Ind. 2015) (similar).

in NCAA sports.  *Cf. Hall v. Nat'l Collegiate Athletic Ass'n*, 985 F. Supp. 782, 794 & n.27 (N.D. Ill. 1997) (concluding that a different form verifying the coursework eligibility of prospective student-athletes constituted a contract for the NCAA's processing agent to "process and then evaluate [the] application" in consideration of a fee and that the student could sue for breach only if the agent "had not processed the information, but cashed the check anyway").

Plaintiffs attempt to cobble together a contract by arguing that the form references the Manual, in which they allege the NCAA makes promises to student-athletes.  This, they contend, makes the Manual a contract between student-athletes and the NCAA.  (SAC ¶¶ 454–456.)  This argument fails.  A review of the Manual makes clear that the NCAA did not make any promises for the student-athletes' benefit in the Manual.  Instead, the Manual divides responsibilities between the NCAA and member institutions.  As the Manual makes clear in the very provisions Plaintiffs cite, while the Manual sets as a goal that "[i]ntercollegiate athletics programs . . . be conducted in a manner designed to protect and enhance the physical and educational wellbeing of student-athletes," (*id.* ¶ 85), it places the responsibility of doing so *with the member institution*, who oversee the day-to-day operations of their respective programs.  (*Compare id. with id.* ¶ 454(d).)  Contrary to Plaintiffs' selective quotation of the Manual, the NCAA does not pledge to require the member institutions to do anything.  Instead, the Manual makes it "*the responsibility of each member institution* to protect the health of, and provide a safe environment for, each of its participating student-athletes," "to establish and maintain an environment that fosters a positive relationship between the student-athlete and coach," and "to establish and maintain an environment in which a student-athlete's activities are conducted as an integral part of the student-athlete's educational experience."  (*Compare* SAC ¶ 454(e)–(g) *with* Luedtke Decl., Ex. 1, ECF No. 123-1 at 8 (NCAA Const. art. II §§ 2.2.3, 2.2.4, 2.2.1).)  The NCAA's role is to "assist the institution" in achieving compliance while "uphold[ing] the principle of institutional control."  (Luedtke Decl., Ex. 1, ECF No. 123-1 at 7 (NCAA Const. art. I § 1.2(b), *id.* at 9 (art. II § 2.8.2).)

Because the Manual contains no promises by the NCAA to student-athletes, there is no

valid contract between the NCAA and student-athletes, and the claim must be dismissed.  *See Bradley v. Nat'l Collegiate Athletic Ass'n*, 249 F. Supp. 3d 149, 172 (D.D.C. 2017) (dismissing claim because plaintiff failed to plead valid contract with the NCAA).

### 3. Plaintiffs Are Not Third-Party Beneficiaries of Any Alleged Contract Between the NCAA and Student-Athletes

Plaintiffs also cannot show that they are the third-party beneficiaries of a contract between the NCAA and member institutions (Count VII).  A third party suing for breach of contract must show "[a] clear intent by the actual parties to the contract to benefit the third party."  *Luhnow v. Horn*, 760 N.E.2d 621, 628–29 (Ind. Ct. App. 2001) (no third-party beneficiary status where "the contract address[ed] only the rights and obligations of the two contracting parties; it contains no provisions which demonstrate an intent to benefit any other person").

The Manual provisions cited by Plaintiffs as the alleged "promises" allocate responsibilities for student welfare between the NCAA and its member institutions.  *See supra* Section III.F.2.  While students might benefit from that division, they are at most incidental—not intended—beneficiaries, and thus cannot sue for breach of contract.  *See Knelman v. Middlebury Coll.*, 898 F. Supp. 2d 697, 715 (D. Vt. 2012), *aff'd*, 570 F. App'x 66 (2d Cir. 2014) (casting doubt on the idea that a student was the intended beneficiary of the NCAA Manual's fairness provisions).  Plaintiffs have not identified any statements "sufficient to support the players' claims that" the NCAA "intended to assume a direct contractual obligation to every" NCAA athlete.  *See Hairston v. Pac. 10 Conf.*, 101 F.3d 1315, 1320 (9th Cir.), *as amended* (Dec. 19, 1996) (statements in PAC-10 Constitution and bylaws did not support a third-party beneficiary claim).  They therefore cannot show third-party beneficiary status.  *Luhnow*, 760 N.E.2d at 628– 29 (contract did not create third-party beneficiary status where it showed an intent to "benefit . . . landowners with property drained by the Starr and Troutman Drains, as a whole, and not a particularized obligation as to any single landowner"); *Ayres v. Indian Heights Volunteer Fire Dep't, Inc*., 493 N.E.2d 1229, 1235 (Ind. 1986) (similar).

DATED:  November 13, 2020                    MUNGER, TOLLES & OLSON LLP


By: _____

CAROLYN HOECKER LUEDTKE
(*pro hac vice*)
TERRA CASTILLO LAUGHTON
(*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-3089
Telephone:      (415) 512-4000
Facsimile:      (415) 512-4077
Email:    Carolyn.Luedtke@mto.com
              Terra.Laughton@mto.com


GLENN D. POMERANTZ
(*pro hac vice*)
HAILYN J. CHEN
(*pro hac vice*)
LAUREN M. HARDING
(*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:      (213) 683-9100
Facsimile:      (213) 687-3702
Email:    Glenn.Pomerantz@mto.com
              Hailyn.Chen@mto.com
              Lauren.Harding@mto.com


ANDREA ROBERTS PIERSON
NICHOLAS B. ALFORD
FAEGRE DRINKER BIDDLE & REATH LLP
300 N. Meridian Street, Suite 2500
Indianapolis, Indiana  46204
Telephone:      (317) 237-1424
Facsimile:      (317) 237-1000
 Email:    andrea.pierson@faegredrinker.com
              nicholas.alford@faegredrinker.com

*Attorneys for Defendants The National Collegiate*
*Athletic Association and The Board of Governors of*
*the National Collegiate Athletic Association*

36

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 13, 2020, a copy of the foregoing was filed electronically with the Clerk of the Court using the Court's CM/ECF system. Parties may access this filing through the Court's system.

DATED:  November 13, 2020        FAEGRE DRINKER BIDDLE & REATH LLP

By:   *Andrea Roberts Pierson*
    ANDREA ROBERTS PIERSON
    NICHOLAS B. ALFORD
    FAEGRE DRINKER BIDDLE & REATH LLP
    300 N. Meridian Street, Suite 2500
    Indianapolis, Indiana  46204
    Telephone:      (317) 237-1424
    Facsimile:      (317) 237-1000
    Email:    andrea.pierson@faegredrinker.com
              nicholas.alford@faegredrinker.com

37